**UNITED STATES, Appellee,**

v.

**Michael HAWKINS, Defendant, Appellant.**

**Nos. 96–2091, 97–1720.**

United States Court of Appeals, First Circuit.

Heard Feb. 6, 1998.

Decided March 18, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied May 21, 1998.

Bernard Grossberg, Boston, MA, by appointment of the Court, for appellant.

Christopher F. Bator, Assistant United States Attorney, Boston, MA, with whom Donald K. Stern, United States Attorney, was on brief, for appellee.

Before TORRUELLA, Chief Judge, BOUDIN and LYNCH, Circuit Judges.

TORRUELLA, Chief Judge. ·

On January 12, 1995, the Melrose, Massachusetts Police Department received a telephone call regarding the fraudulent purchase of video tapes from a store in Clearwater, Florida. An extensive investigation ensued, producing sufficient evidence to allow the authorities to seek and obtain a search warrant of Appellant's business and residence. The warrant included a "no-knock" provision for the search of Appellant's apartment.

This provision was requested after police discovered that Appellant had an extensive criminal record involving acts of violence. These included convictions for armed robbery, armed robbery while masked, assault with a dangerous weapon, threats, assault and battery, possession of a dangerous weapon, using a firearm with intent to commit a crime, assault with a dangerous weapon, and a firearms violation (possession of a shotgun). Furthermore, the investigating police officer also had recently learned that Appellant had threatened a neighbor with a gun. Thus, believing that Appellant was armed and dangerous, and that the investigation by the police may have alerted him to the situation that was developing, the state sought, and a state judge granted, a "no-knock" warrant for the apartment in question.

On January 20, 1995 the police executed the warrant on Appellant's apartment seeking to obtain evidence of the fraudulent purchase of the videotapes. The door was broken down with a sledge hammer, the officers entered with drawn weapons, and Appellant was ordered to the ground with a gun held to his head. The search produced several items, including several of the tapes sought, but more relevant to this appeal, the executing officers found one box of Winchester .22 caliber hollow-point cartridges, as well as a .22 caliber rifle cleaning kit. Small amounts of illegal controlled substances, and stolen computer equipment were also discovered. One of the officers also discovered a ring of keys on the kitchen countertop. A resident of the apartment building indicated that there were storage compartments assigned to each apartment in the common basement of the building, whereupon the search party proceeded to that area. There they found twelve open storage areas, enclosed within a framing covered with chicken wire, the interiors of which were visible from outside the enclosures. All but two of the enclosures were marked with numbers corresponding to apartment numbers located in the building. Apartment 5, Appellant's premises, was one of the two numbers that was not marked on any locker. Upon testing by a police officer of several of the keys recovered from Appellant's apartment on the locks of the two unnumbered storage spaces, he was able to unlock one of the locks. The officers did not proceed further and again locked the premise in question. They were able to observe through the chicken wire, however, several boxes located inside.

With this information, the police sought and received an additional warrant to search the storage area that was assigned to Appellant's apartment. Upon execution of this warrant, the police discovered the firearms enumerated in Count One of the indictment, namely, a Colt .45 caliber semi-automatic pistol, a Colt .357 caliber magnum revolver, a Charter Arms .22 caliber rifle, and an Astra .22 caliber semi-automatic pistol with an obliterated serial number.

The fruits of this investigation were turned over to the federal authorities, whereupon Appellant was charged in a two count indictment alleging violations of 18 U.S.C. § 922(g)(1), because he was a convicted felon in possession of firearms and of ammunition. Appellant sought to suppress the evidence obtained from his apartment, including the keys, as well as the items seized from his storage compartment in the basement of the apartment house. The motion was denied by the district court and thereafter Appellant entered a conditional guilty plea. After being sentenced by the district court to a term of 180 months' incarceration and five years' supervised release, Appellant sought to withdraw his plea. This request was denied by the district court and this appeal followed.

Three errors are claimed on appeal: (1) the failure to grant the suppression of the evidence seized at Appellant's apartment and locker, (2) the denial of the motion to withdraw the conditional guilty plea, and (3) the inclusion of state charges for conspiracy to commit a violent felony and possession of a firearm during the commission of a felony as convictions under 18 U.S.C. § 924(e) and Section 4B1.4 of the Sentencing Guidelines. Finding that the district court committed no error in its rulings, we affirm Appellant's conviction.

## I. The Motion to Suppress

Appellant challenges the district court's finding that the "no-knock" provisions of the search warrant to his apartment were lawful, and questions the court's validation of the police entry into the basement area and the discovery of the evidence located there.

## A. "No–Knock" Warrants

Although there is a presumption in favor of announcement, i.e., knocking or some similar gesture, this postulate "yield[s] under circumstances presenting a threat of physical violence." *Wilson v. Arkansas*, 514 U.S. 927, 936, 115 S.Ct. 1914, 1918–19, 131 L.Ed.2d 976 (1995). The burden that must be met by the police to validate a "no-knock" entry "is not high." *Richards v. Wisconsin*, 520 U.S. 385, ——, 117 S.Ct. 1416, 1422, 137 L.Ed.2d 615 (1997). "Under *Richards*, a no-knock entry is justified if police have a 'reasonable suspicion' that knocking and announcing would be dangerous ... to the purposes of the investigation." *United States v. Ramírez*, —— U.S. ——, ——, 118 S.Ct. 992, 995, 140 L.Ed.2d 191 (1998). In this case, Appellant's copious record of violent convictions, coupled with the attesting police officer's personal knowledge of a recent armed action by him, and the officer's suspicion that Hawkins was aware of the police interest in him more than sufficiently justified a "reasonable suspicion" that knocking and announcing their presence would be dangerous to the officers executing the search warrant.

Furthermore, this was not a spur of the moment decision by the executing officers. The matter was submitted to the judgment of a judicial officer who passed upon facts submitted, the existence of which has not been questioned. Under these circumstances the executing officers were clearly entitled to rely on the validity of the warrant. *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Thus the evidence discovered in the apartment, including the ammunition and the basement locker keys, was legally obtained and could have been used by the government against Appellant at trial, had one taken place.

## B. The Basement

It is now beyond cavil in this circuit that a tenant lacks a reasonable expectation of privacy in the common areas of an apartment building. *See United States v. Cruz Pagán*, 537 F.2d 554, 557–58 (1st Cir.1976). The unenclosed areas of the basement of this

apartment building were such common areas. *See id.* Appellant thus had no reasonable expectation of privacy in the basement common area. *See United States v. Thornley,* 707 F.2d 622, 625 (1st Cir.1983).

■ Once legally inside this area, the police had a right to perceive whatever was available to them through the use of their senses, including their common sense. *Cf. Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925) (probable cause is a flexible "common sense" standard). This exercise revealed, (1) that all the lockers were numbered, except two; (2) that one of the two numbers missing corresponded to Appellant's apartment number; (3) that the keys legally obtained in Appellant's apartment fitted one of the unnumbered lockers,[1] and thus that area was most likely subject to his control; and (4) that the boxes that could be observed through the chicken wire most likely belonged to Appellant and could contain additional evidence relevant to the subject of the criminal investigation.

Proceeding with this information to seek a search warrant to inquire into the contents of the boxes was exactly what was appropriate under the circumstances of this case. The evidence uncovered as a result of this procedure was thus legally admissible against Appellant.

## II. Appellant's Attempted Withdrawal of Conditional Plea

■ Four criteria have been established as determinative in considering motions to withdraw guilty pleas: (1) the plausibility of the reasons prompting the requested change of plea; (2) the existence or not of an assertion of innocence; (3) the timing of the motion; and (4) whether, when viewed in the light of emergent circumstances, the plea was knowing, voluntary, and intelligent, within what is mandated by Rule 11 of the Federal Rules of Criminal Procedure. *United States v. Muriel,* 111 F.3d 975, 977 (1st Cir. 1997).

Appellant does not claim any defect in the Rule 11 proceeding. The colloquy shows that there was none. Appellant was thoroughly questioned by the trial judge without any coercion being apparent from the record or being claimed thereafter. It further shows that he clearly understood the charges against him, that he voluntarily and intelligently admitted his guilt and the facts sufficient to support these charges, and that he understood the consequences of these actions.

Against this scenario, we have Appellant's claim, made 16 months after he entered his plea and 9 months after he was sentenced, that he was unaware of the firearms contained in one of the boxes found in the basement, which according to this latest version, were brought into his house by his former wife in 1993, and then stored in the basement. To this, Appellant adds the insinuation that the firearms were "planted" in these boxes by his former wife's police officer boyfriend.

Fortunately, although perhaps less so for Appellant, we need not enter this potential morass. Appellant seems to overlook that he was charged and convicted under Count Two of the indictment for being a felon in possession of *ammunition,* in itself a violation of § 922(g), independent of the charges contained in Count One. None of his contentions affect his conviction on the second count, because that count stemmed from the evidence seized in Appellant's apartment, and was not based upon evidence taken from his storage locker. Appellant's conviction on Count Two alone would have been sufficient to support the sentence he received. For this reason, all of the arguments raised as to Count One are, in fact, irrelevant.

The district court did not exceed its discretion in denying Appellant's request to withdraw his conditional guilty plea.

## III. The Sentencing Non–Issues

■ Appellant's main contention regarding his sentencing is his claim of improper inclusion of two state convictions as predicate

---

**1.** We should note that insertion of a key into the lock of a storage compartment for the purpose of identifying ownership does not constitute a search for purposes of the Fourth Amendment. *See United States v. Lyons,* 898 F.2d 210, 212–13 (1st Cir.1990).

offenses to establish that he qualified as a career armed criminal subject to mandatory sentencing under the Armed Career Criminal Act ("ACCA"). 18 U.S.C. § 924 *et seq.*

■ It is settled law in this circuit that authority interpreting the Sentencing Guidelines' definition of "crime of violence", U.S.S.G. § 4B1.2(1), is persuasive in interpreting the ACCA's definition of what constitutes a violent felony pursuant to § 924(e)(2)(B) of that statute, and vice versa. *See United States v. Meader,* 118 F.3d 876, 882–83 (1st Cir.1997); *United States v. Fiore,* 983 F.2d 1, 3 (1st Cir.1992). We have also unequivocally held that *conspiracy* to commit a crime of violence, as defined in the career offender guidelines, is itself a crime of violence for purposes of its treatment under the Guidelines. *Fiore,* 983 F.2d at 3. Considering that armed robbery is defined as a "crime of violence" under ACCA, 18 U.S.C. § 924(e)(2)(B), it is clear that the district court committed no error in concluding that Appellant's conviction for conspiracy to commit armed robbery was a qualifying predicate to his being sentenced under the mandatory minimum sentencing requirements of that statute. 18 U.S.C. § 924(e)(1).

Because this conviction, in conjunction with Appellant's other convictions for predicate offenses, is sufficient to qualify him as a career armed criminal under § 924(e), "we need go no further."

The district court committed no reversible error and Appellant's conviction is therefore *affirmed.*