# United States Court of Appeals
## For the First Circuit

---

No. 99-2120

UNITED STATES,

Appellee,

v.

JOHN D. BROWN,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

---

Before

Torruella, Chief Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

---

Charles W. Groce, III for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom Stephanie S. Browne, Assistant United States Attorney, and Margaret E. Curran, United States Attorney, were on brief, for appellee.

---

June 5, 2001

---

**STAHL, <u>Senior Circuit Judge</u>**.  Plaintiff-appellant John Brown was indicted by a federal grand jury on drug and firearm charges based on evidence seized during a search of his apartment by the Rhode Island State Police.  Brown moved to suppress the evidence, arguing that the officers violated his Fourth Amendment rights by failing to knock and announce their presence when executing the warrant authorizing the search.  Brown's motion was denied, and he subsequently pled guilty to certain of the counts against him.  He now appeals the denial of his motion to suppress.  For the reasons discussed below, we vacate and remand.

I.

Early in March 1998, detectives with the Rhode Island State Police obtained information from a confidential source suggesting that cocaine was being distributed from an apartment in Providence, Rhode Island.  The source identified Brown as one of the individuals residing at the apartment, and as the person involved in the drug dealing.  The source claimed to have been inside the apartment several times, including, most recently, five days prior to his contact with the police, and to have seen significant quantities of cocaine and at least one firearm.  A subsequent review of state records and police surveillance yielded information confirming Brown's presence at the apartment and indicating that Brown had previously been arrested for a drug

-3-

offense in Connecticut. On the basis of this information, the officers sought a warrant to search Brown's apartment for, inter alia, drugs and weapons.

An application for the warrant was made by Officer Patrick Reilly in Rhode Island state court on March 17, 1998. The application consisted of a completed complaint, signed by Reilly, and Reilly's affidavit setting out the facts supporting issuance of the warrant. In the affidavit, Reilly stated that the police sought a "no-knock" search warrant, in order to "prevent narcotics/evidence from being destroyed and to ensure officer safety." However, the complaint did not include any language indicating that the police were seeking a no-knock warrant.

What transpired when Reilly appeared before the judge is only sketchily recounted in the present record. According to Reilly's testimony at the suppression hearing, the no-knock request was specifically discussed with the judge, as was the absence of language in the complaint form regarding the need for a no-knock warrant. Reilly testified that the judge asked him to correct the complaint form to make clear that a no-knock warrant was being requested. Reilly made and initialed a handwritten notation to that effect on the complaint form and the judge then signed the warrant. While it appears that, at this point, Reilly

believed he had been granted the requested no-knock warrant, it is undisputed that the search warrant the judge actually signed contained no language authorizing a no-knock entry.  Reilly's testimony also revealed little about what led him to believe that the judge had agreed with the request for a no-knock warrant.

The officers executed the warrant later the same day, entering Brown's apartment without knocking or announcing their presence.[1]  Once inside, they encountered Brown and advised him of his rights, and Brown admitted that there was cocaine in his bedroom.  The officers entered that room and found 22 plastic bags containing a total of 52.52 grams of cocaine; four firearms, including a sawed-off shotgun; and various other accouterments of the drug trade.  On the basis of this evidence, a federal grand jury returned a six-count indictment charging Brown with possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count One); possession of firearms while a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Counts Two through Five); and possession of an unregistered sawed-off shotgun, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871 (Count Six).

---

[1]Officer Reilly, who took part in executing the warrant, testified that the police entered the house in which Brown's apartment was located through an unlocked rear door.  Finding the door to Brown's unit locked, they "knocked the door in and proceeded into the apartment."

Brown subsequently moved to suppress the evidence seized from his apartment on two grounds: first, that the warrant was not supported by probable cause (an argument not pressed on appeal and therefore not further discussed); and, second, that the officers had improperly failed to knock and announce their presence when executing the warrant. The district court held a hearing on Brown's motion at which Officer Reilly was the only witness to offer testimony on this issue. Reilly gave brief testimony concerning his application for the search warrant and the search itself and was cross-examined, also briefly, by Brown's attorney.

In the oral argument that followed, Brown's attorney contended that the evidence was insufficient to establish that the officers' no-knock entry was authorized by a warrant, or justified by any recognized exception to the Fourth Amendment knock-and-announce requirement. The government countered that the manner of the entry was in fact justified on both grounds: the no-knock entry had been made in reliance on the state judge's approval, notwithstanding the lack of a notation on the warrant itself, and the unannounced entry was necessary to protect the police from danger in executing the warrant.

Ruling from the bench, the district court denied Brown's motion. Bypassing the dispute over whether the judge had

-6-

authorized a no-knock entry, or whether the police reasonably believed that he had, the court found that the entry was justified by a reasonable concern for the officers' safety. In reaching this conclusion, the court relied on three pieces of information obtained by the police from the confidential informant and recited by Reilly in his affidavit and oral testimony: Brown's asserted involvement in "storing and distributing cocaine" from his apartment; the alleged observation of "large amounts of cocaine" inside the apartment; and the observation of "at least one firearm" inside the apartment. The court concluded that this information created "a reasonable suspicion that knocking and announcing the presence of the officers might very well have caused the occupants to use the firearm in a manner that would have been dangerous to the officers."

Following the denial of his motion, Brown pled guilty to Counts One, Two, and Six of the indictment pursuant to a plea agreement in which he reserved his right to appeal the denial of the suppression motion. On August 24, 1999, Brown was sentenced to 135 months of imprisonment, followed by three years of supervised release.

II.

Although the Fourth Amendment's requirement of reasonableness in the conduct of searches and seizures incorporates the common-law expectation that police will announce their presence and request admittance before entering a dwelling by force, Wilson v. Arkansas 514 U.S. 927, 933 (1995), it does not "mandate a rigid rule of announcement that ignores countervailing law enforcement interests," id. at 934. Instead, the Constitution creates a "presumption in favor of announcement" that will yield in appropriate circumstances, including those where compliance would expose officers to the "threat of physical violence" or "where police officers have reason to believe that evidence would be destroyed if advance notice were given." Id. at 935-36. The standard to be applied when determining whether such "exigent circumstances" excuses non-compliance with the knock-and-announce rule is one of "reasonable suspicion" -- based on the "particular circumstances" of the case -- that knocking and announcing "would be dangerous or futile, or that it would . . . allow[] the destruction of evidence." Richards v. Wisconsin, 520 U.S. 385, 394 (1997). Establishing the applicability of the exception is not particularly difficult, id. at 934; however, "the police should be required to [demonstrate the existence of reasonable suspicion] whenever the reasonableness of a no-knock entry is challenged." Id. at 934-35.

-8-

On appeal, Brown does not contest the substance of the evidence relied upon by the district court. Nor does he seriously dispute any of the factual evidence introduced by the government. Instead, Brown renews his argument that, under the circumstances of this case, the evidence relied upon by the district court is inadequate under the reasonable-suspicion standard to establish the existence of circumstances justifying a no-knock entry. The determination of whether a given set of facts constitute exigent circumstances justifying deviation from the knock-and-announce principle is reviewed de novo. United States v. Collazo-Aponte, 216 F.3d 163, 185 (1st Cir. 2000), vacated and remanded on other grounds, ---U.S.---, 2001 WL 530830; see also United States v. Cooper, 168 F.3d 336, 339 (8th Cir. 1999). In conducting our de novo review, we assess the entirety of the record below "in the light most favorable to the trial court's ruling." United States v. Tibolt, 72 F.3d 965, 969 (1st Cir. 1995).

A.        Brown's Challenges to the District Court's Ruling

In questioning the sufficiency of the evidence supporting the district court's ruling, Brown makes two distinct arguments. First, he contends that the evidence that the government introduced, and the district court relied upon, failed to specifically establish the circumstances that existed at the

-9-

time the officers entered Brown's apartment.  Brown notes that precedent requires the reasonableness of a particular entry to "be evaluated as of the time [the police] entered . . ." Richards, 520 U.S. at 395.  Yet, Brown argues, both Reilly's affidavit and testimony refer only to the circumstances as they were thought to exist at the time of the warrant hearing.  In Brown's view, such evidence, by itself, cannot justify the officers' no-knock entry.

As a general principle of law, Brown is wrong in suggesting that information contained in a warrant application or discussed at a warrant hearing cannot justify a later no-knock entry.  Established precedent allows state judicial officers to issue no-knock warrants "where sufficient cause to do so can be demonstrated ahead of time," Richards, 520 U.S. at 396 n.7, and allows the police, in most instances, to rely on such authorization, once granted, see United States v. Hawkins, 139 F.3d 29, 32 (1st Cir. 1998) (applying the rule of reasonable reliance announced in United States v. Leon, 468 U.S. 897 (1984), to warrant provisions authorizing no-knock entry).  At least where a warrant is issued, then, no-knock entries may be made on the basis of information presented at a warrant hearing without running afoul of the requirements of the Fourth Amendment. Furthermore, we think it clear that, in most cases, there would

-10-

be no reason to distinguish between what officers knew (or suspected) at the time of the warrant hearing and what they knew (or suspected) when executing the warrant. Absent some suggestion that the earlier-presented evidence was no longer reliable by the time of the entry, we see no reason why officers should be required to introduce affirmative evidence simply to establish that they haven't changed their minds.[2]

There is, however, a narrower reading of Brown's position, articulated more clearly at oral argument, which merits examination. Under the somewhat unusual circumstances of this case, it remains unresolved whether the judge ever did, in fact, approve the officers' request for a no-knock warrant. While the government argued in the district court that Reilly's version of events supported an inference that the judge at least intended to issue such a warrant, Brown argued in favor of a contrary inference, and the district court specifically declined to decide the issue. In effect, then, the court found that the officers were justified in making a no-knock entry even if their request for permission to do so had been refused.

_____

[2]If Brown genuinely believed that later evidence established the absence of a need for no-knock entry, the obvious avenue for investigating this possibility would have been through cross-examination of Reilly at the suppression hearing. Brown's counsel did not do so.

In this context, we agree with Brown that the district court's exclusive reliance on evidence presented at the warrant hearing is problematic. Finding such evidence sufficient to justify the officers' actions would require us to conclude that the officers were free to second-guess a judicial refusal of their request for a no-knock warrant, without having shown any new information or other reason for doing so. Such a conclusion strikes us as troubling, especially in light of the critical role Fourth Amendment precedent has historically ascribed to state judicial officers in preventing mistakes and misconduct. Cf. Leon, 468 U.S. at 913-14 (noting that the warrant process "provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime") (internal quotation marks omitted). In our view, it should be a rare case in which an unannounced entry, made in the wake of an outright refusal to give authorization for the same, could be justified on the basis of the evidence already passed upon by the judicial officer.

We are also not persuaded by the government's argument that Richards supports the district court's conclusion. It is true that Richards upheld an unannounced entry following the

denial of a no-knock warrant request.  See 520 U.S. at 395-96.

It is also true that Richards contains language discussing the

role of an officer's "independent judgment" in determining the

reasonableness of an unannounced entry.  See id. at 396 n.7 ("[A]

magistrate's decision not to authorize a no-knock entry should

not be interpreted to remove the officers' authority to exercise

independent judgment concerning the wisdom of a no-knock entry at

the warrant is being executed.").  However, the facts of Richards

are readily distinguishable from those of this case.   In

Richards, the officers' decision to make an unannounced search

was prompted by unforeseen circumstances encountered during

execution of the warrant.   See id.[3]   The Court expressly

acknowledged this in explaining why the officers' actions were

justified:

> At the time the officers obtained the
> warrant, they did not have the evidence
> sufficient, in the judgment of the
> Magistrate, to justify a no-knock warrant.
> Of course, the Magistrate could not have
> anticipated in every particular the

---

[3]The officers' efforts to gain entry into Richards's
apartment were based in part on a ruse involving an officer
dressed as a maintenance man.  See id. at 388.  This officer
succeeded in getting Richards to open the door, but Richards
observed the uniformed officers standing some distance away and
slammed the door shut again.  Id.  At that point the officers,
apparently recognizing that they had been discovered and
concerned that Richards might try to escape or destroy evidence,
commenced breaking the door down without prior announcement.
Id.

-13-

> circumstances that would confront the officers when they arrived at Richard's motel room. <u>These actual circumstances . . . justified the officers' ultimate decision to enter without first announcing their presence and authority</u>.

<u>Id.</u> (emphasis added). <u>Richards</u> thus does not establish that the police may second-guess a judge's refusal to issue a no-knock warrant on the basis of the same circumstances considered by the judge.

In any event, we need not decide whether or to what extent the police may face a heightened burden in justifying an unannounced entry made after an application for a no-knock warrant has been denied. On the present record, we vacate the district court's ruling for the second reason Brown offers: the evidence introduced does not establish a danger to the officers sufficient to justify unannounced entry under the officer-safety exception. Although the hurdle imposed by the reasonable suspicion standard is "not high," <u>Richards</u>, 520 U.S. at 394, it is nonetheless real, and the scant details set forth in Reilly's affidavit and elicited by the government at the suppression hearing are insufficient to clear it.

As the government largely concedes, the evidence of dangerousness contained in the present record falls well short of the proof we previously have found to be sufficient to justify no-knock entry. Without apparent exception, our cases have

-14-

involved not only evidence of the <u>presence</u> of weapons at the dwelling to be searched, but also evidence supporting an inference that the target of the search might actually use them. <u>See, e.g.</u>, <u>Collazo-Aponte</u>, 216 F.3d at 186 (upholding no-knock entry on officer-safety rationale where record contained "ample evidence that the officers knew [defendant] was a member of a well-armed and extremely violent drug organization"); <u>Hawkins</u>, 139 F.3d at 32 (upholding no-knock search on officer-safety rationale in light of defendant's "copious record of violent convictions, coupled with the arresting police officer's personal knowledge of a recent armed action by him, and the officer's suspicion that [the defendant] was aware of the police interest in him"); <u>United States</u> v. <u>Jewell</u>, 60 F.3d 20, 23-24 (1st Cir. 1995) (upholding no-knock search where officer had personal knowledge of a pit bull dog in the apartment and of the defendant's "extensive history of arrest and conviction for violent crimes."). Here, the information available to the police conveyed little beyond the bare fact that "at least one weapon" had been observed, and nothing whatsoever concerning Brown's propensity to violence.[4]

---

[4]In its brief, the government suggests that the district court inferred that Brown might be motivated to use a weapon by virtue of its conclusion that "knocking and announcing the presence of the officers might very well have caused the occupants to use the firearm in a manner that would have been

-15-

In addition, the decisions of our sister circuits tend to undercut the district court's conclusion. At least three circuits have held that evidence tending to show no more than the probable presence of a weapon in a dwelling, even a dwelling associated with drug dealing, is categorically inadequate to justify no-knock entry on officer-safety grounds. See United States v. Moore, 91 F.3d 96, 98 (10th Cir. 1996) ("The mere statement that firearms are present, standing alone, is insufficient [to justify no-knock entry]. The government must go further and demonstrate that the presence of firearms raised a concern for the officers' safety."); United States v. Bates, 84 F.3d 790, 795 (6th Cir. 1996) ("Evidence that firearms are within a residence, by itself, is not sufficient to create an exigency to officers when executing a warrant."); United States v. Marts, 986 F.2d 1216, 1218 (8th Cir. 1993) ("The reasonable belief that firearms may have been within the residence, standing alone, is clearly insufficient [to justify no-knock entry]."). And while several courts have stated that they are more willing to infer dangerousness where both drugs and weapons are involved, see, e.g., United States v. Stowe, 100 F.3d 494, 499 (7th Cir. 1996)

---

dangerous to the officers." However, this general statement is based on nothing in the record beyond the three previously recited allegations, and we decline to accord it significant weight.

-16-

("While the presence of a gun alone is not necessarily enough [to justify no-knock entry], drug dealing is a crime infused with violence . . . . Guns _and_ drugs together distinguish the millions of homes where guns are present from those housing potentially dangerous drug dealers . . . .") (emphasis in original) (internal citations omitted), they have done so in factual circumstances that are, albeit to varying degrees, perceptibly more threatening than those described in the record before us. See, e.g., id. (upholding search made pursuant to a no-knock warrant, where informant had confirmed the presence of loaded weapons in the apartment mere hours earlier, and apartment had a steel door that could make entry difficult); United States v. Gambrell, 178 F.3d 927, 929 (7th Cir.), cert. denied, 528 U.S. 920 (1999) (upholding search made pursuant to a no-knock warrant where informant had stated that residents carried loaded weapons on their persons while in the apartment and when answering the door); United States v. Kennedy, 32 F.3d 876, 882-83 (4th Cir. 1994) (upholding entry despite lack of pause between announcement and forcible entry where police knew defendant was participating in an extensive cocaine conspiracy involving dealers with prior weapons

-17-

convictions and where at least one member of the conspiracy had previously threatened an officer).[5]

Finally, we are concerned that finding adequate the slight, generalized evidence of dangerousness in this record would come close to creating an impermissible blanket exception to the knock-and-announce principle in a large subgroup of cases. As the Supreme Court acknowledged in Richards, the possibility or even probability that weapons will be present in a dwelling to be searched exists in many investigations involving crimes of violence. See 520 U.S. at 393-94. Yet, even in those cases, the decision to make a no-knock entry must be based upon a case-by-case determination that the circumstances of the particular entry present a "threat of physical violence." Id. at 391; see also id. at 393 (overturning decision of Wisconsin Supreme Court holding a no-knock entry to be justified in all cases where a warrant authorizes the search of a dwelling involved in the drug trade).

_____

[5]We acknowledge that the Fourth Circuit's decision in United States v. Lalor, 996 F.2d 1578 (4th Cir. 1993), is a case with facts somewhat like those here, see id. at 1584-85 (upholding no-knock search where weapon had been found during arrest of same defendant which took place five days earlier and defendant had made "derogatory remarks about the police"). But that decision appears to rest in part on the mistaken application of clear-error review to the district court's finding that exigent circumstances had been demonstrated. See id. In any event, Lalor does not shake our belief that vacatur is warranted here.

In view of the foregoing, we need not and do not decide whether, under another set of circumstances or on a fuller record, the presence of one or more weapons at a dwelling where drug dealing is suspected might be adequate to justify a no-knock entry. We simply hold that, in light of the limited testimony and other evidence introduced by the government, the existence of a danger to officers justifying no-knock entry was not demonstrated here.

B.        Alternative Grounds for Affirmance

In the parties' briefs and at oral argument, several alternative grounds for upholding the district court's ruling were discussed. See United States v. Garcia, 983 F.2d 1160, 1167 (1st Cir. 1993) (noting that this court "will uphold [a district court's] denial of [a] motion to suppress if any reasonable view of the evidence supports it"). Although none of them is wholly implausible, we conclude that none has adequate support in the present record.

The first such argument is that the officers' no-knock entry, if not justified by the officer-safety rationale, was nonetheless permissible to prevent the destruction of evidence. The government notes that the drug in question -- cocaine -- is one that this Court has found to be "quickly and easily destroyed," Garcia, 983 F.2d at 1168, and contends that this

fact, coupled with evidence suggesting that the drugs were in the residence and thus accessible to Brown, was sufficient to give the police "reasonable suspicion that knocking and announcing their presence . . . would inhibit the effective investigation of the crime by . . . allowing the destruction of evidence." Richards, 520 U.S. at 394.

We think this alternative "exigent circumstances" argument ultimately fails for the same reasons as the district court's rationale. Approving the officers' actions on this basis would require a significant extension of this circuit's Fourth Amendment precedent. Although we have previously acknowledged the readily disposable nature of cocaine, we have thus far found this fact only to mitigate the length of time officers must wait between announcement and entry, not to justify dispensing with announcement altogether. Garcia, 983 F.2d at 1168 (upholding district court's conclusion that ten- to fifteen-second wait between announcement and entry complied with knock-and-announce rule in context of a drug raid involving cocaine); United States v. One Parcel of Real Property, 873 F.2d 7, 9 (1st Cir. 1989) (same). Nor has the government identified any precedent from other courts justifying no-knock entry on similar facts. To the contrary, at least one court has concluded that where, as here, large amounts of cocaine are thought to be present, the

destruction-of-evidence rationale is not persuasive.  See Bates, 84 F.3d at 796 (affirming district court ruling that destruction of evidence rationale was not plausible where police believed that fifteen pounds of cocaine were present and agreeing that it was "unreasonable to think that fifteen kilograms of powder cocaine could be quickly disposed of by flushing it down the toilet or dumping it down the sink drain").

The government also contends that the no-knock entry can be justified on the Leon principle of reasonable reliance.  See 468 U.S. at 922 (holding suppression not required for "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant"); see also Hawkins, 139 F.3d at 32 (applying Leon in no-knock context).  Two distinct rationales are offered for how Leon should apply in this case. First, the government argues that the record mandates the inference that the state judge actually did authorize a no-knock search, notwithstanding the lack of a notation to that effect on the face of the warrant, and that the officers acted in reliance on that authorization when they entered Brown's apartment. Because of this, in the government's view, Leon requires that we uphold the search, even if doubtful, as long as we do not find that the officers' reliance was unreasonable.  See 468 U.S. at 922-923.  In support of its position, the government cites United

-21-

States v. Mattison, 153 F.3d 406, 410 (7th Cir. 1998), which upheld a no-knock search conducted pursuant to a facially deficient warrant on essentially this theory.[6]

The inference the government asks us to draw is plausible, but we do not think it is inescapable. Although the record suggests that Reilly personally believed the search was authorized, there is little indication of what the judge said or did that led Reilly to believe this. And, as previously noted, Brown has argued that the objective facts in the record could be read to yield the opposite inference. Our caution is further amplified in this case by the fact that the district court -- which sat in a far better position than we to form an opinion as to the credibility and meaning of Reilly's testimony -- expressly declined to make this determination. These circumstances stand in contrast to those in Mattison. In that case, the government introduced testimony from several witnesses establishing that, in the county where the warrant was obtained, it was "common procedure" for judges to authorize no-knock entry without making an express notation on the face of the warrant. Mattison, 153

---

[6]Also relevant, in our view, is Massachusetts v. Sheppard, 468 U.S. 981 (1984), in which the Supreme Court held that a state judge's "fail[ure] to make all the necessary clerical corrections" to a warrant, thereby rendering it invalid, did not prevent officers from relying on the warrant in conducting a search. Id. at 990-91.

F.3d at 409, 410.  On the basis of this evidence, the information contained in the warrant application, and testimony from an officer confirming that the police believed the authorization had been given, the district court expressly found that a no-knock warrant was, in fact, issued.[7]  Id. at 410.  In the absence of a similarly clear record, or comparable on-point findings by the district court, we are not convinced that the same result should obtain in this case.

Furthermore, we note that the absence of clear evidence or relevant findings regarding the state judge's actions prevents us from evaluating, as we must under Leon, whether the officers' reliance on the purported authorization was objectively reasonable.  See 468 U.S. at 919 n.20.  As Leon explains, objective reasonableness does not "turn on the subjective good faith of individual officers."[8]  Id.  Instead, it requires a showing of "objective good faith," determined by considering

---

[7]The facts of this case also distinguish it from Sheppard, where the record included a detailed recitation of the interchange between the judge and the police, and where the trial court had found that the judge stated an intention to issue the warrant and expressly informed the police that he had made the necessary "clerical corrections."  See 468 U.S. at 986-87 & n.3, 989-90.

[8]For this reason, the government is incorrect that this question is resolved by the district court's conclusory statement that it "appeared" that Officer Reilly's belief that he had authorization was in good faith.

whether the officer acted "as a reasonable officer would and should act in similar circumstances." Id. at 920 (quoting Stone v. Powell, 428 U.S. 465, 539-540 (1976) (White, J., dissenting)). Because the district court chose to bypass the government's Leon argument, it made no findings on this issue, and we decline to do so in the first instance.

The government's brief also suggests a second way in which Leon might apply to this case. According to this alternative argument, the officers must be given the benefit of Leon, even if we cannot find that the search was actually authorized, because the record demonstrates that the officers believed, in good faith, that authorization had been given. While we think it unclear whether Leon would apply under the circumstances the government describes,[9] we need not decide that issue here. Even if good-faith belief could bring the officers' conduct within the scope of Leon, the present record provides an inadequate basis for evaluating the objective reasonableness of the officers' reliance, precluding affirmance on this ground.

III.

---

[9]By its terms, Leon provides the safe harbor of reasonable reliance only where authorization has been given but is later determined to have been given in error. See 468 U.S. at 919-920. It would therefore plainly extend the law to provide similar protection to police actions undertaken in the mistaken, although reasonable, belief that a particular entry was authorized.

Because the record as it currently stands is insufficient to sustain the district court's ruling, we vacate the ruling and remand for further proceedings consistent with this opinion.  On remand, we direct the district court to address the government's argument that the officers' actions were justified under <u>Leon</u> because the state judge authorized the no-knock entry and the officers reasonably relied on that authorization.[10]  We note but do not rule on the government's request for permission to argue on remand that, even if a knock-and-announce violation occurred, the discovery of the seized evidence was inevitable under the rule of <u>Nix</u> v. <u>Williams</u>, 467 U.S. 431, 440-448 (1984).  In the absence of any briefing from Brown on this question, we think it appropriate to leave to the district court the determination of whether this issue may be raised for the first time following remand.

<u>It is so ordered</u>.

_____

[10]While we think it probable that the district court will be able to resolve this issue on the basis of the existing record, we do not now decide whether the record may be reopened on remand.  We consider the question of whether to reopen the record to lie within the trial court's discretion, and are particularly reluctant to resolve it without the benefit of briefing from the parties.  We note, however, that other courts to consider the issue have held that such reopenings should be allowed only sparingly, and upon an adequate justification by the party so moving for its failure to introduce the new evidence at the initial hearing.  <u>See, e.g.</u>, <u>United States</u> v. <u>Kithcart</u>, 218 F.3d 213, 219-20 (3d Cir. 2000); <u>United States</u> v. <u>Blankenship</u>, 775 F.2d 735, 740 (6th Cir. 1985).