**UNITED STATES of America**

v.

**Antonio T. GONZALEZ**

**No. 96–30014–MAP.**

United States District Court, D. Massachusetts.

Aug. 24, 2001.

Ariane D. Vuono, United States Attorney's Office, Todd E. Newhouse, United States Attorney's Office, Springfield, MA, for U.S.

Lori Levinson, Cain, Hibbard, Myers & Cook, Pittsfield, Mark G. Mastroianni, Springfield, MA, for Antonio T. Gonzalez.

## MEMORANDUM REGARDING DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE
(Docket No. 25)

PONSOR, District Judge.

### I. INTRODUCTION

Defendant Antonio Gonzalez, who has been indicted on gun possession charges, has moved to suppress physical evidence found at his home during the execution of a search warrant in the evening of September 30, 1995. He argues that the clerk-magistrate who issued the warrant did not have a sufficient basis upon which to allow the officers to break down his door unannounced, and that the officers' reliance on that authorization was unreasonable.

With some reluctance, the court will deny defendant's motion to suppress. Although there was insufficient justification for a "no-knock" entry under the circumstances, the officers reasonably relied on the warrant they received. Suppression is therefore not appropriate.

### II. BACKGROUND

In January, 1995, defendant Antonio Gonzalez became a target of the Eastern Hampden County Narcotics Task Force, a local police collaborative directed at drug dealing in Western Massachusetts. The investigation, which lasted about nine months, gathered information from infor-

mants about suspicious behavior by defendant and included surveillance of possible drug-related activity at his home, 450 Monson Road in Wilbraham, Massachusetts.

In September 1995, Sergeant Roger Tucker, a member of the Task Force, applied for a warrant to search defendant's home. The affidavit accompanying the application included detailed evidence that defendant was dealing cocaine. Sergeant Tucker described a series of "trash pulls"—searches of trash bags from the house—that turned up torn portions of small plastic baggies with cocaine residue inside. He also reported suspicious behavior by defendant that had been reported to police by informants.

The warrant application included a request for permission to enter the premises unannounced—what is known as a "no-knock" entry. This section of the affidavit relied heavily on what the officer believed to be "the common practice[s] of narcotic dealers," namely, their tendency to destroy narcotics when the police announce themselves, to keep weapons along with their drugs, to hide drugs on individuals unlikely to be searched, such as children, and to use lookouts or "police scanning devices" to forewarn them of officers' presence. *See* Docket No. 30, Ex. A (Tucker Aff.) at 4. Sergeant Tucker also stated that because the Monson Road address had a "lengthy driveway" with windows facing the street, no-knock entry was required to ensure the "element of surprise." *See id.* In another section of the affidavit, Tucker mentioned in passing that Gonzalez owned a Rottweiler dog.

The clerk-magistrate of the Palmer District Court approved the warrant application and the request for no-knock entry. Although the warrant allowed seizure of all weapons at the address, Sergeant Tucker testified that at the time of the application he had no knowledge of any weapons there and did not expect to find any. The focus of the search was drugs.

On the evening of September 30, 1995, the Task Force executed the warrant on 450 Monson Road, breaking down the front door and entering with guns drawn. After arresting defendant and his girlfriend, they found a 9 mm handgun, ammunition, small amounts of marijuana, and other evidence of drug dealing. The handgun and ammunition form the basis of the current charges against defendant: possession of a firearm with an obliterated serial number and being a felon in possession of a firearm. Defendant was taken into custody and, while he was held at the Wilbraham Police Department, made certain arguably inculpatory statements about drug dealing and the gun.[1]

## III. DISCUSSION

■ It is by now beyond dispute that "[a]s a general rule, officers must give notice of their authority and purpose before entering private premises to make an arrest." *United States v. Collazo–Aponte,* 216 F.3d 163, 186 (1st Cir.2000), *rev'd on other grounds,* —— U.S. ——, 121 S.Ct. 1996, 149 L.Ed.2d 1000 (2001). Police officers may enter a home unannounced only upon reasonable suspicion that knocking and announcing their presence would be dangerous or futile, or would inhibit the effective investigation of the crime. *See Richards v. Wisconsin,* 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). This rule is no recent judicial innovation— it has been "embedded in Anglo–American law" for centuries, held in place by "the

---

1.  These statements were also the subject of a motion to suppress, which the court denied by oral ruling on August 13, 2001.

ancient adage that a man's house is his castle." *Miller v. United States,* 357 U.S. 301, 307, 313, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). As early as 1603, the King's Bench had held that before the sheriff may break into a person's home,

> he ought to signify the cause of his coming, and to make request to open doors ... for the law without a default in the owner abhors the destruction or breaking of any house (which is for the habitation and safety of man) by which great damage and inconvenience might ensue to the party, when no default is in him ....

*Semayne's Case,* 5 Co. Rep. 91a, 91b, 77 Eng.Repr. 194, 195 (K.B.1603). The rule was incorporated into the common law of most states at their founding, and has been consistently followed throughout the history of the republic. *See Wilson v. Arkansas,* 514 U.S. 927, 931–934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995) (describing history of common law announcement principle). It is now considered "an element of the reasonableness inquiry under the Fourth Amendment." *Id.* at 934, 115 S.Ct. 1914. Considering the profound invasion of privacy that such entry involves, the law could hardly be otherwise.

Apart from its Constitutional dimension, the knock-and-announce rule serves important practical interests. In many cases, announcement reduces the potential for violence by informing occupants of the home that the person seeking entrance is not a burglar or an invader, but a police officer acting on lawful authority. The rule also curbs the needless destruction of private property—if the occupant would have opened the door upon a simple request to do so, breaking it down is an unwarranted injury to a presumptively innocent person. Finally, like all protections of privacy, it serves basic interests of human dignity. "The brief interlude between announcement and entry with a warrant may be the opportunity that an individual has to pull on his clothes or get out of bed." *Richards,* 520 U.S. at 393 n. 5, 117 S.Ct. 1416.

■ The knock-and-announce rule, of course, is not so rigid that it "ignores countervailing law enforcement interests." *Wilson,* 514 U.S. at 934, 115 S.Ct. 1914. Rather, the "presumption in favor of announcement" will yield in "exigent circumstances," including those "where compliance would expose officers to the threat of physical violence or where police officers have reason to believe that evidence would be destroyed if advance notice were given." *United States v. Brown,* 251 F.3d 286, 290–91 (1st Cir. 2001) (internal quotations omitted). The standard for determining whether such exigent circumstances exist is one of "reasonable suspicion," based on the particular circumstances of the case. *See id.* at 291, *citing Richards,* 520 U.S. at 394, 117 S.Ct. 1416.

■ This motion presents two questions: (1) was the clerk-magistrate justified in permitting the police to execute an unannounced entry; and (2) if not, should the evidence be admitted because of the "good faith" exception to the exclusionary rule? [2]

---

**2.** At oral argument, an additional question was raised: whether the "inevitable discovery" doctrine would allow admission of the evidence. The inevitable discovery doctrine is inapposite, for two reasons. First, it requires that the legal means for the inevitable discovery be "truly independent." *United States v. Silvestri,* 787 F.2d 736, 744 (1st Cir. 1986). Here, there was only one search, and no other independent means of discovery appeared on the horizon. *Compare United States v. Zapata,* 18 F.3d 971, 978 (1st Cir. 1994) (holding that inevitable discovery applied to search of uninsured, impounded car

## A. The No–Knock Warrant.

Defendant argues that there was no justification for the clerk-magistrate to approve unannounced entry. He points out that the relevant section of the affidavit rests almost entirely on generalities about the practices of drug dealers; the only case-specific facts simply point out that defendant had a "lengthy driveway," and that his "windows face the street," characteristics common to many homes. *See* Docket No. 30, Ex. A (Tucker Aff.) at 4. The approval of the warrant on this thin factual basis, defendant argues, shows that the clerk-magistrate did not engage in a specific inquiry into whether "the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement." *Richards,* 520 U.S. at 394, 117 S.Ct. 1416. Rather, the approval comes close to a blanket rubber-stamp of no-knock entry in drug searches, an approach the Supreme Court has expressly rejected. *See id.* at 393, 117 S.Ct. 1416.

The Government responds by emphasizing the low quantum of proof needed by the police and the clerk-magistrate: "reasonable suspicion." The small, torn-off baggie remnants found in the trash pulls, it argues, gave the police evidence that drugs were being packaged in small quantities in the house, quantities easily flushed down a toilet. There were also two people in the house at the time of the search, creating the possibility that one person could flush the drugs down the toilet, the other down the sink. This, the Government argues, gave the police a reasonable suspicion that knocking and announcing their presence would give the defendant and his girlfriend time enough to destroy the drugs before the police could seize them. Finally, although the defendant had no record of violence, the Government argues that the known presence of defendant's Rottweiler dog made the officers' safety a concern favoring no-knock entry. *See United States v. Jewell,* 60 F.3d, 20, 23–24 (1st Cir.1995).

■■ Defendant has the far stronger argument here. The facts known to the police at the time of the warrant were plainly insufficient to justify an unannounced entry. The first rationale, the destructibility of cocaine, finds no support in the law of this Circuit. The Court of Appeals has thus far "found this fact only to mitigate the length of time officers must wait between announcement and entry, not to justify dispensing with announcement altogether." *Brown,* 251 F.3d at 295; *see also U.S. v. Garcia,* 983 F.2d 1160, 1168 (1st Cir.1993) (approving ten to fifteen second wait between knock and entry in search for cocaine); *U.S. v. One Parcel of Real Property,* 873 F.2d 7, 9 (1st Cir.1989) (upholding five to ten second wait). Thus, a reasonable suspicion that cocaine, even in small quantities, is present does not justify an unannounced entry.[3]

---

because subsequent inventory search of vehicle would have revealed contraband). Second, the doctrine requires that its application must not significantly weaken Fourth Amendment protections. *See Silvestri,* 787 F.2d at 744. Were "inevitable discovery" to apply here, there would essentially be no exclusionary remedy in cases of improper no-knock entry. This would significantly weaken, if not nullify, this important rule.

3. The Government's additional concern, that the presence of two people in the home would expedite the destruction of drugs, is also unpersuasive. If accepted, it would essentially limit the protection of the knock-and-announce rule in drug cases to situations where only one person is present, "creating an impermissible blanket exception to the knock-and-announce principle in a large subgroup of cases." *Brown,* 251 F.3d at 294. It is also noteworthy that the officers conducting the search chose deliberately to wait until the

■ The second proffered justification, the safety of the officers, is also not supported by the facts. The officer safety justification for no-knock entry requires a reasonable suspicion that the defendant is likely to engage in violence against the officers. *See Collazo–Aponte,* 216 F.3d at 186 (upholding no-knock entry on officer-safety rationale where record contained "ample evidence that the officers knew [defendant] was a member of a well-armed and extremely violent drug organization"); *United States v. Hawkins,* 139 F.3d 29, 32 (1st Cir.1998) (noting defendant's "copious record of violent convictions").

■ Here, no evidence suggests the defendant himself was violent. Rather, the Government argues that the presence of defendant's Rottweiler dog, which was mentioned in passing in the affidavit (but not specified as a reason for the "no knock" application) constituted a sufficient danger to satisfy this standard. It is true that the Fourth Amendment "d[oes] not require the police to risk having to fight off a forewarned attack dog before executing their warrant." *Jewell,* 60 F.3d at 24. At the same time, however, to support an unannounced entry, the Court of Appeals "without apparent exception" has required "not only evidence of the *presence* of weapons at the dwelling to be searched, but also evidence supporting an inference that the target of the search might actually use them." *Brown,* 251 F.3d at 293 (emphasis in original). Although the court in the *Jewell* case upheld an unannounced entry based in part on the presence of a pit bull, it also relied on defendant's "extensive history of arrest and conviction for violent crimes" to infer that he might use the pit bull as an attack dog or would otherwise react violently. *See Jewell,* 60 F.3d at 24.

defendant and his girlfriend returned home

In this case, there was no evidence of any potential for violence on the part of defendant or the dog. Instead, "the information available to the police conveyed little beyond the bare fact that at least one [potential] weapon [i.e., the Rottweiler] had been observed, and nothing whatsoever concerning [defendant's] propensity to violence." *Brown,* 251 F.3d at 293 (internal quotations omitted). This is insufficient, by a long shot, to overcome the presumption in favor of announcement.

In sum, the facts offered in the affidavit were flatly insufficient to satisfy the constitutionally required prerequisites to an unannounced entry.

### B. *Good Faith Exception.*

■ The Government next asserts that, assuming the affidavit could not support the no-knock entry, the evidence should not be suppressed because of the "good faith" exception to the exclusionary rule. Under the good faith exception, illegally-seized evidence is admissible at trial where the officer conducting the search acted "in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *United States v. Leon,* 468 U.S. 897, 900, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The principle applies to an authorization of a no-knock entry in a warrant. *See Hawkins,* 139 F.3d at 32.

■ Although the good faith exception is broad, it is not boundless—reliance by the officer must be "objectively reasonable." *Leon,* 468 U.S. at 922, 104 S.Ct. 3405. Where "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization," the evidence will be excluded. *Id.* at 922 n. 23, 104 S.Ct. 3405.

before initiating the search.

Defendant argues that no reasonably well-trained police officer would have believed that the facts in the affidavit justified a no-knock entry, despite the magistrate's approval. *See Malley v. Briggs*, 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Officers who obtain warrants may not entirely hide behind a magistrate's authorization—rather, they must "minimize the danger by exercising reasonable judgment." *Id.* at 346, 106 S.Ct. 1092. If "a reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant," then he cannot "excuse his own default by pointing to the greater incompetence of the magistrate." *Id.* at 345, 346, 106 S.Ct. 1092.

■ Although the defendant's argument has force, the good faith exception does apply here. Viewing all the information in the affidavit, the facts supporting unannounced entry were not so thin that reliance on the warrant was "entirely unreasonable." *Leon*, 468 U.S. at 923, 104 S.Ct. 3405. At the time of the application, the police knew (1) that drugs were in the apartment and were being packaged there in small quantities, (2) that defendant had a Rottweiler dog, (3) that the driveway was "lengthy" and (4) that defendant was not alone. Although insufficient to establish reasonable suspicion, this information—at least as of September 1995, the date of the application—could have given a "reasonably well-trained officer" cause to seek the magistrate's approval for an unannounced entry. *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. 3405.

Moreover, at the time of the application, there was some disagreement in the courts as to whether the likely presence of drugs at a premises to be searched necessarily created sufficiently "exigent circumstances" to justify a no-knock entry. *Compare State v. Stevens*, 181 Wis.2d 410, 511 N.W.2d 591 (1994), *cert denied*, 515 U.S. 1102, 115 S.Ct. 2245, 132 L.Ed.2d 254 (1995) (upholding blanket exception in felony drug cases); *People v. Lujan*, 174 Colo. 554, 559, 484 P.2d 1238 (1971) (en banc) (holding that exigent circumstances pertain in "every case involving a search for narcotics"); *and Henson v. State*, 236 Md. 518, 523–24, 204 A.2d 516 (1964) (same), *with State v. Anonymous*, 30 Conn.Supp. 197, 308 A.2d 251, 252 (1973) (disapproving blanket exception).

■ Although such a blanket rule has never been accepted in this Circuit, and was subsequently rejected by the Supreme Court, the existence of some degree of judicial disagreement takes the case out of the realm of wholesale unreasonableness and supports the presumption by the officers that the magistrate was "more qualified than the police officer to make a . . . determination." *Malley*, 475 U.S. at 346 n. 9, 106 S.Ct. 1092. Where the law is unsettled or where legal rules are subject to differing opinions, officers may rely on the magistrate's authorization. *See, e.g., United States v. Brunette*, 256 F.3d 14, 19–20 (1st Cir.2001) (applying good faith exception where the "uncertain state of the law at the time made reliance on the warrant objectively reasonable"); *United States v. Nolan*, 199 F.3d 1180, 1183–85 (10th Cir. 1999) (same); *United States v. Buck*, 813 F.2d 588, 593 (2d Cir.1987) (same). In other words, officers should be allowed to trust magistrates on "close calls." *See* WAYNE R. LAFAVE, 1 SEARCH & SEIZURE 91 (1996).

■ However, the fact that this case may have been close enough six years ago says nothing about reasonable reliance in the future. In 1997, the *Richards* case rejected a blanket rule exempting officers from the knock-and-announce requirement in drug searches. *See Richards*, 520 U.S. at 394–95, 117 S.Ct. 1416. By extension, affidavits in support of no-knock entries

that rely only on generalizations about drug dealers, and fail to examine the "facts and circumstances of the particular entry," are wholly insufficient. *See id.* at 394, 117 S.Ct. 1416. Additionally, earlier this year the First Circuit explicitly reiterated that the expected presence of drugs in the place to be searched, standing alone, may only lessen the amount of time officers must wait before entering; such expectation does not excuse announcement altogether. *See Brown,* 251 F.3d at 295. Taken together, these cases now make the need for a proper showing crystal clear to any reasonably well-trained officer. In the future, a no-knock search based on evidence as thin as this will not suffice, whether approved by a clerk-magistrate or not.

So there is no confusion, let me repeat. Law enforcement officers in the four counties of western Massachusetts who wish to present the fruits of a search in criminal prosecutions in this federal court should bear in mind that evidence seized following a "no-knock" search *will be suppressed,* unless the affidavit sufficiently supports the unannounced entry—even where the application has been approved by a clerk-magistrate. There are limits to the "good faith" exception. On this issue, the limit has been reached.

### IV. CONCLUSION

Defendant's motion to suppress will be DENIED. A separate order will issue.

### ORDER

For the reasons stated in the accompanying Memorandum, defendant's Motion to Suppress Physical Evidence (Docket No. 25) is hereby DENIED.

It is So Ordered.