## COMMONWEALTH *VS.* RICARDO ORTEGA.

Bristol. January 5, 2004. - March 10, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Controlled Substances. Practice, Criminal,* Assistance of counsel, Motion to suppress, Conduct of prosecutor, Argument by prosecutor, Required finding. *Constitutional Law,* Assistance of counsel. *Evidence,* Relevancy and materiality.

At the trial of an indictment for trafficking in heroin, the Commonwealth presented sufficient evidence that the defendant had constructive possession of the heroin to warrant a verdict of guilty. [173-175]

This court concluded that trial counsel in a criminal case was not ineffective for failing to file a motion to suppress evidence seized from the defendant's apartment, challenging the sufficiency of the affidavit in support of a "no-knock" search warrant, as the motion was highly unlikely to succeed [175-178]; likewise, no ineffective assistance of counsel resulted from trial counsel's failure to call additional witnesses, where the defendant failed to show that the prospective witnesses' testimony would have contributed materially to his defense or that trial counsel's failure to call them was manifestly unreasonable [178-179].

A prosecutor's questioning of a witness at a criminal trial, bringing out the defendant's association with possible drug users, did not constitute error warranting reversal of the defendant's conviction for trafficking in heroin, where only one question of this type was asked, the prosecutor did not bring up the issue in his closing statement, and there was other, ample evidence that the defendant had constructive possession of the heroin [179-180]; further, statements in the prosecutor's closing argument did not amount to improper vouching for the credibility of police witnesses [180-181] and were not otherwise improper [181-182].

INDICTMENT found and returned in the Superior Court Department on September 29, 1999.

The case was tried before *Catherine A. White,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Barry P. Wilson* for the defendant.

*Steven E. Gagne,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. A Superior Court jury convicted the defendant, Ricardo Ortega, of trafficking in heroin (G. L. c. 94C, § 32E [c] [1]).[1] On appeal, the defendant contends that trial counsel was ineffective because he failed to file a motion to suppress evidence seized during the execution of a no-knock search warrant, and to call essential witnesses at trial. The defendant also claims that the prosecutor's redirect examination of a witness and closing argument created reversible error, and that the trial judge erred in denying his motions for required findings of not guilty.[2] The Appeals Court upheld the conviction. *Commonwealth* v. *Ortega*, 59 Mass. App. Ct. 217 (2003). We granted the defendant's application for further appellate review. Because we conclude that the evidence, viewed in the light most favorable to the Commonwealth, *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), was sufficient for the jury to find the defendant guilty beyond a reasonable doubt, trial counsel was not ineffective, and the prosecutor's questioning of a witness and closing argument were not improper, we affirm the judgment of the Superior Court.

*Facts.* We summarize the facts as the jury could have found them, in the light most favorable to the Commonwealth, reserving certain details for discussion in connection with the specific issues raised. *Commonwealth* v. *Sanna*, 424 Mass. 92, 93 (1997). Beginning in the second week of January of 1999, Officer Troy Spirlet of the New Bedford police department began surveillance of the defendant at 280 Acushnet Avenue in New Bedford. During the next three weeks, Spirlet observed the defendant coming and going from the premises more than twenty-five times, often using a key to gain entry.[3] On some occasions,

---

[1]The jury found the defendant not guilty of unlawful possession of marijuana with intent to distribute, two indictments charging violation of the controlled substance law in a school zone were nol prossed, and it appears from the record that a guilty plea on an indictment charging conspiracy to violate the controlled substance law was to be placed on file with the defendant's consent and is not before us on appeal.

[2]Following his conviction, the defendant filed a motion for a new trial, raising the same issues he now presents on appeal, which the trial judge denied. The defendant did not appeal from that ruling.

[3]Spirlet testified that 280 Acushnet Avenue is a secure building; a key is necessary to gain entry.

Spirlet followed the defendant from 280 Acushnet Avenue to various locations and back.

On February 5, 1999, Spirlet obtained a no-knock, "any person present," search warrant for apartment no. 3H at 280 Acushnet Avenue that authorized the seizure of all drugs and materials related to the delivery or distribution of controlled substances. On February 6, 1999, at approximately 8 A.M., Spirlet and three detectives executed the warrant. In the apartment, the police found the defendant, a woman later identified as Kelly Rodrigues, and a small child on a mattress in the middle of the living room.[4]

When the defendant saw the police, he ran down the hallway into the bathroom. After being subdued and handcuffed, the defendant was given the Miranda warnings. Although the defendant denied doing so (see note 6, *infra*), the police testified that he then told them that he wished to cooperate, showed them a hallway closet, and motioned his head toward a shoebox on a shelf in the closet. In the box, the police found a large amount of heroin and several items commonly used in drug operations, including a wooden ink stamp, mannitol (a substance used to dilute heroin), a sifter, a digital scale, a roll of tape, glassine packets, and small elastic bands. The police also seized 250 glassine packets of heroin on the counter of a service opening between the living room and the kitchen, twelve boxes of glassine packets, marijuana in the refrigerator, and more than $1,000 in cash. No drugs were found on the defendant's person.

During the course of the search, the police also found men's clothing and shoes in the bedroom closet, bottles of aftershave lotion in the bedroom, an envelope addressed to the defendant at the Acushnet Avenue address, other mail forwarded to him there, and bank statements in the defendant's name with a different address. The police found a rent receipt and utility bills in the name of Kelly Rodrigues. Additionally, the officers seized an identification card from the State of New York that had a photograph of the defendant and listed an address in New York City, and another document indicating that the defendant's address had been 120 Carverloop, Bronx, New York.

---

[4] It was later determined that the child was the daughter of Rodrigues and the defendant.

At the time of the search, the defendant told the police that his address was 280 Acushnet Avenue, apartment no. 3H. On release from custody, the defendant signed a bail recognizance that listed 280 Acushnet Avenue as his residence.[5] However, at trial, the main thrust of the defense was denial of any connection to the apartment where the drugs and other indicia of distribution were found.[6] The defendant moved for required findings of not guilty after the close of the Commonwealth's evidence and, again, at the close of all the evidence. The judge denied both motions.

*Discussion.*

1. *Denial of motions for required findings of not guilty.* The defendant claims that the judge erred in denying his motions for required findings of not guilty, because the evidence established nothing more than his presence in the apartment and, thus, no trier of fact could have rationally concluded that the defendant had possession of the heroin found therein. We disagree. The

[5]The defendant acknowledged signing the bail recognizance, but disavowed the handwriting that indicated 280 Acushnet Avenue to be his residence.

[6]The defendant testified that in February of 1999 he was living at his mother's house at 120 Carverloop, Bronx, New York. He explained that he had moved from the Bronx to Massachusetts, lived with Kelly Rodrigues at 379 Cedar Street in New Bedford for approximately one and one-half years and, when their relationship ended, moved back to the Bronx. The defendant stated that he never lived at 280 Acushnet Avenue, nor did he keep his clothing or toiletries there, but acknowledged that he visited the apartment three or four times during the previous month to see his daughter.

The defendant testified that on the day before the raid, he arrived at the apartment around 10:30 or 11 P.M. and agreed to babysit his daughter while Rodrigues went out. The defendant stated that he fell asleep on the couch and was awakened by the police "banging" on the apartment door. The defendant denied nodding or otherwise directing the police toward the hallway closet and denied that he had any knowledge of the shoebox in the closet. He said that he never had a key to the apartment and never paid any portion of the rent.

On cross-examination, the defendant acknowledged that mail had been forwarded to him at 280 Acushnet Avenue, but stated that Rodrigues had arranged for the change of address. He stated that he saw neither the 250 glassine packets of heroin that were on the counter of the service opening between the living room and the kitchen nor marijuana in the refrigerator. When asked whether any witnesses were available to testify that he lived in New York, the defendant stated: "My girlfriend's right outside. She knows that I live in New York." The defense then rested without calling any additional witnesses.

defendant's contention concerns the weight and credibility of the evidence, "a matter wholly within the province of the jury." *Commonwealth* v. *Martino*, 412 Mass. 267, 272 (1992).

Viewing the evidence in the light most favorable to the Commonwealth, *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), we conclude that the Commonwealth presented sufficient evidence that the defendant had constructive possession of the heroin to warrant a verdict of guilty of trafficking in heroin.[7] See *Commonwealth* v. *Cordle*, 412 Mass. 172, 175 (1992). In the absence of actual possession, to prove constructive possession, the Commonwealth must present evidence that the defendant had both knowledge of the contraband and the ability and intention to exercise dominion and control over it. *Commonwealth* v. *Garcia*, 409 Mass. 675, 686 (1991), and cases cited. That proof may be accomplished by circumstantial evidence and "the reasonable — not inescapable — inferences to be drawn from it." *Commonwealth* v. *Velasquez*, 48 Mass. App. Ct. 147, 150 (1999). See *Commonwealth* v. *Fisher*, 433 Mass. 340, 342-343 (2001), quoting *Commonwealth* v. *Lydon*, 413 Mass. 309, 312 (1992) (relevant inquiry is "whether the evidence would permit a jury to find guilt, not whether the evidence requires such a finding"). Although mere presence where drugs are discovered is not enough to support an inference of possession of the drugs, the defendant's presence, coupled with a " 'plus' factor," i.e., other incriminating evidence, may suffice. *Commonwealth* v. *Velasquez, supra* at 149.

The evidence in this case supplies the "plus factor" beyond mere presence to permit a finding that the defendant had constructive possession of the heroin found in the apartment. See *id.* at 150. Spirlet saw the defendant coming and going from the premises numerous times, sometimes using a key to enter. After the police entered the apartment, the defendant

[7]There are five elements to the charge of trafficking in heroin that the Commonwealth must prove beyond a reasonable doubt, namely that (1) the defendant knowingly or intentionally (2) possessed (actually or constructively) (3) fourteen grams or more (4) of heroin (5) with the specific intent to distribute it. G. L. c. 94C, § 32E (*c*) (1). Because no heroin was found on the defendant's person, the Commonwealth proceeded under the theory that the defendant had constructive possession of the heroin.

indicated that he wished to cooperate and nodded his head toward the closet where the shoebox was found. Furthermore, 250 glassine packets of heroin were found in plain view. See *Commonwealth* v. *Garcia, supra* at 687 (discovery of cocaine in plain view may have supported inference that defendants had knowledge of it); *Commonwealth* v. *Almeida*, 381 Mass. 420, 423 (1980) (finding gun in plain view supports inference that defendant would likely have seen it). Additionally, the police found men's clothing, shoes and aftershave lotion in the apartment, as well as mail addressed to the defendant at 280 Acushnet Avenue, apartment no. 3H, and mail forwarded to him there. Moreover, at the time of the search the defendant told the police he lived at the apartment, and later signed a bail slip that stated he lived there. Therefore, the judge did not err in denying the defendant's motions.[8]

2. *Ineffective assistance of counsel.* For the defendant to prevail on his claim of ineffective assistance of counsel, we must conclude, first, that "there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," and, second, that "it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). See *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977) (requiring "showing that better work might have accomplished something material for the defense"). A lawyer's "arguably reasoned tactical or strategic judgments," *Commonwealth* v. *Rondeau*, 378 Mass. 408, 413 (1979), do not amount to ineffective assistance of counsel unless they are "manifestly unreasonable" when made. *Id.*, quoting *Commonwealth* v. *Adams*, 374 Mass. 722, 728-729 (1978). See *Commonwealth* v. *Lynch*, 439 Mass. 532, 537, cert. denied, 540 U.S. 1059 (2003); *Commonwealth* v. *Amirault*, 424 Mass. 618, 645 n.19 (1997) (defendant bound by counsel's tactical decisions); *Commonwealth* v. *Florentino*, 396 Mass. 689, 690 (1986)

---

[8]The Commonwealth's position as to proof did not deteriorate by the close of all the evidence, because the credibility of the defendant as a witness and the weight of his testimony are issues for the jury to decide. See *Commonwealth* v. *Martino*, 412 Mass. 267, 272-273 (1992); *Commonwealth* v. *Elliffe*, 47 Mass. App. Ct. 580, 584 (1999).

(judicial scrutiny of counsel's performance "highly deferential").

a. *Failure to file motion to suppress.* The defendant's contention that his trial counsel was ineffective for failing to file a motion to suppress evidence seized from the apartment, challenging the sufficiency of the affidavit in support of the no-knock search warrant, is without merit. We conclude that even if trial counsel had filed a motion to suppress evidence, alleging that the affidavit in support of the application for the no-knock warrant was insufficient, the motion would likely have been unsuccessful. Thus, trial counsel was not ineffective for failing to file the motion.[9] *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983) (attorney not ineffective for failing to file motion with minimal chance of success). See *Commonwealth* v. *Purinton*, 32 Mass. App. Ct. 640, 642-644 (1992) (counsel not ineffective for failure to take action that would have had little positive result).

A no-knock entry is permitted if the affidavit supporting the search warrant contains information from which a magistrate can conclude that there is probable cause to believe that the officers' safety would be endangered or the evidence sought would be destroyed. See *Commonwealth* v. *Jimenez*, 438 Mass. 213, 216 (2002), and cases cited; *Commonwealth* v. *Scalise*, 387 Mass. 413, 420 (1982). In making the probable cause determination, all the facts set forth in the affidavit must be examined together, rather than in isolation, taking into account the police officers' expertise and experience. *Commonwealth* v. *Feijoo*, 419 Mass. 486, 498 (1995). *Commonwealth* v. *West*, 55 Mass. App. Ct. 467, 470 (2002). See *Commonwealth* v. *Fisher*, 54 Mass. App. Ct. 41, 44 (2002), quoting *Commonwealth* v. *Fraser*, 410 Mass. 541, 545 (1991) (several factors "innocent of themselves," when combined, may amount to probable cause). However, the mere fact that drugs are involved is insufficient to justify a no-knock warrant. *Commonwealth* v. *Scalise, supra* at 421.

In his affidavit in support of the no-knock warrant, Officer Spirlet stated that he had extensive experience in narcotics

---

[9]To hold otherwise would be tantamount to encouraging counsel to file frivolous motions to avoid later claims of ineffective assistance.

investigations and the execution of numerous narcotics search warrants. See *Commonwealth* v. *West, supra*. Spirlet further explained that a confidential and reliable informant had told him that a man known to him as "Richie"[10] was selling heroin by making deliveries to buyers or meeting customers near his apartment complex located at 280 Acushnet Avenue in New Bedford.[11] Spirlet then described in detail a controlled buy of heroin made by the informant from the defendant, and stated that during the surveillance period (three to four weeks), he saw the defendant coming and going from 280 Acushnet Avenue "an unusual [number] of times," sometimes with other males then also under investigation for narcotics violations.[12] Regarding imminent danger to the officers, the affidavit did not merely describe "general concerns present in the execution of any warrant authorizing a search for drugs," *Commonwealth* v. *Jimenez, supra* at 218, but instead detailed the defendant's and Rodrigues's assaultive history, including previous arrests for narcotics violations and several charges of assault and battery by means of a dangerous weapon. *Commonwealth* v. *Allen*, 28 Mass. App. Ct. 589, 595 (1990) (no-knock justified where defendant and friend were wanted for "violent crimes involving dangerous weapons"). See *Commonwealth* v. *Cundriff*, 382 Mass. 137, 147-148 (1980), cert. denied, 451 U.S. 973 (1981). As to the potential destruction of evidence, the affidavit set forth the following information from a reliable informant: the suspect did not allow customers to come into his apartment to avoid drawing attention to himself, and the suspect used several different vehicles, including rental vehicles, to make deliveries. Finally, the affidavit stated that the apartment was located on the third floor of a residential building, making it more likely that the occupants of the apartment would have advance

[10]After searching records, the police located a photograph of the defendant, who had been arrested in the past; the informant recognized the defendant as being the male previously known to him as "Richie."

[11]The informant also told Spirlet that he had purchased heroin from Richie during the week of January 24, 1999, as well as within seventy-two hours of the warrant application.

[12]Spirlet also explained that police investigations revealed that the defendant and Rodrigues had been in a "dating relationship," and that Rodrigues was renting apartment no. 3H at 280 Acushnet Avenue.

knowledge of the officers' presence and purpose and would be able promptly to dispose of the evidence sought. See *Commonwealth* v. *Jimenez, supra* at 218, 220-221. Considering these facts and reasonable inferences drawn from them, we conclude that the affidavit was sufficient, and, therefore, it is highly unlikely that a motion to suppress would have succeeded. Trial counsel was not ineffective for failing to file "a motion with a minimal chance of success." *Commonwealth* v. *Conceicao, supra* at 264. See *Breese* v. *Commonwealth,* 415 Mass. 249, 256 (1993).[13]

b. *Failure to call additional witnesses.* The defendant claims that his trial counsel was ineffective because he failed to call his current girl friend, his mother, and Kelly Rodrigues to corroborate his contention that he lived in New York, rather than at 280 Acushnet Avenue.[14] However, ineffective assistance of counsel is not established merely by showing that the defendant's counsel did not call additional witnesses. See *Commonwealth* v. *Rondeau,* 378 Mass. 408, 413 (1979); *Commonwealth* v. *McMaster,* 21 Mass. App. Ct. 722, 735 (1986). To prevail, the defendant must show that the purported testimony would have been relevant or helpful. *Commonwealth* v. *Beauchamp,* 49 Mass. App. Ct. 591, 609-610 & n.23 (2000) (defendant must show that counsel's fault probably led to forfeiture of otherwise substantial ground of defense).

Here, the defendant failed to show that the prospective witnesses' testimony would have contributed materially to his defense or that trial counsel's failure to call them was manifestly unreasonable. See *Commonwealth* v. *Britto,* 433 Mass. 596, 602 (2001), and cases cited (decision to call witness is tactical judgment that amounts to ineffective assistance of counsel only if manifestly unreasonable when made). The defendant provided

---

[13]In addition, the police properly made the requisite "threshold reappraisal" of the situation at the time of the entry. *Commonwealth* v. *Scalise,* 387 Mass. 413, 421 (1982). The police "bang[ed] the door" and must have said something, because the defendant's testimony ("I remember Robert Richard [one of the officers] banging the door") suggests that he recognized one of the officers by voice.

[14]The defendant asserts that Rodrigues could have also testified that she and the defendant were not engaged in a relationship, and to the respective locations of herself, the defendant, and their daughter at the time the police entered the apartment.

no affidavits from any of the prospective witnesses setting forth the testimony they would have given had they been called as witnesses. See *Commonwealth* v. *Lynch*, 439 Mass. 532, 538-539 & n.2 (2003); *Commonwealth* v. *Collins*, 36 Mass. App. Ct. 25, 30 (1994) (without affidavits, no way to determine whether prospective witnesses' testimony would likely have made material difference). Counsel's failure to call additional witnesses did not likely deprive the defendant of an "otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).[15]

3. *Propriety of the prosecutor's conduct.* a. *Improper questioning of witness.* The defendant first claims that the prosecutor improperly questioned Officer Troy Spirlet, potentially resulting in the defendant's conviction based on guilt by association.[16] *Commonwealth* v. *Szemetum*, 3 Mass. App. Ct.

---

[15]Furthermore, a review of the record reveals that trial counsel's efforts, albeit unsuccessful, were competent and reasonable, and did not fall "measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). See *Commonwealth* v. *McCormick*, 48 Mass. App. Ct. 106, 108 (1999) (reasonable tactical decisions, even if unsuccessful, are not grounds for finding ineffective assistance). The primary focus of the defense was to disavow any connection between the defendant and the drugs and drug paraphernalia found in the apartment. In his opening statement, the defense counsel told the jury that the defendant and Rodrigues no longer lived together, that the apartment was Rodrigues's, and the defendant went there only to visit his daughter. He elicited testimony that the defendant's name did not appear on the apartment's lease or utility bills, and that at the time of the search, neither drugs nor apartment keys were found on the defendant. Defense counsel also called the jury's attention to evidence that the defendant lived in New York, including a New York identification card. Finally, in his closing statement, defense counsel reiterated that the Commonwealth did not present sufficient evidence linking the defendant to the apartment. Counsel was not ineffective.

[16]After defense counsel, on cross-examination, brought out that Spirlet had not written down the names of people he saw with the defendant during his surveillance, the following exchange occurred between the prosecutor and Spirlet on redirect examination:

THE PROSECUTOR: "Well, in response to [defense counsel's] question, you stated you saw [the defendant] with people going in and out?"

OFFICER SPIRLET: "Yes."

THE PROSECUTOR: "Did you know any of those people?"

OFFICER SPIRLET: "Yes."

THE PROSECUTOR: "How did you know them?"

651, 653-654 (1975) (person cannot be convicted based on guilt by association). See *Commonwealth* v. *Gonzalez*, 47 Mass. App. Ct. 255, 259 (1999). The prosecutor's question, bringing out the defendant's association with possible drug users, ought not to have been asked.[17] *Id.* ("Associational evidence of that sort is suspect . . ."). However, in this case, unlike in *Commonwealth* v. *Perry*, 357 Mass. 149, 151 (1970), and *Commonwealth* v. *Fancy*, 349 Mass. 196, 200 (1965), the prosecution had other strong evidence of constructive possession and did not rely solely on the defendant's association with persons who had possession of contraband. In sum, there is no reversible error because only one question of this type was asked, the prosecutor did not bring up this issue in his closing statement, and there was other, ample evidence that the defendant had constructive possession of the heroin. *Commonwealth* v. *Pagano*, 47 Mass. App. Ct. 55, 60 (1999), cert. denied, 528 U.S. 1089 (2000). *Commonwealth* v. *Gonzalez, supra.*

b. *The prosecutor's closing argument.* The defendant further claims that the prosecutor improperly vouched for the credibility of the Commonwealth's witnesses and made statements as to what he would have done in the defendant's position. Because the defendant did not object to the portions of the prosecutor's closing argument he now challenges, we must determine whether any such errors created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Richmond*, 379 Mass. 557, 562-563 & n.4 (1980); *Commonwealth* v. *Roberts*,

---

OFFICER SPIRLET: "From past investigations and cases."

THE PROSECUTOR: "What type of investigations?"

OFFICER SPIRLET: "Drug —"

DEFENSE COUNSEL: "Objection, your Honor."

THE JUDGE: "Sustained."

THE PROSECUTOR: "No further questions, your Honor."

Defense counsel did not move to strike this testimony. The prosecutor did not raise the matter again.

[17]However, the prosecutor was entitled to show that Spirlet knew and recognized the persons he had seen with the defendant to counter defense counsel's suggestion that the officer was unlikely to remember their identities. See *Commonwealth* v. *Chavis*, 415 Mass. 703, 713 (1993), and cases cited (prosecutor entitled to make fair response to attack on government witness's credibility).

378 Mass. 116, 122-123 (1979), *S.C.*, 423 Mass. 17 (1996). We conclude that they did not.

The first of the challenged remarks, set forth below, did not amount to improper vouching for the credibility of the police officers.[18] Improper vouching occurs if "an attorney expresses a personal belief in the credibility of a witness, or indicates that he or she has knowledge independent of the evidence before the jury." *Commonwealth* v. *Wilson*, 427 Mass. 336, 352 (1998). The prosecutor did neither. In this case, defense counsel raised the issue of credibility of the police witnesses' testimony, and it was proper for the prosecutor to argue from the evidence why these witnesses should be believed; the prosecutor did not vouch for their credibility. *Commonwealth* v. *Raymond*, 424 Mass. 382, 391 (1997). See *Commonwealth* v. *Murchison*, 418 Mass. 58, 60 (1994) (witness credibility "is obviously a proper subject of comment"); *Commonwealth* v. *Chavis*, 415 Mass. 703, 713 (1993) ("the prosecutor may make a fair response to an attack on the credibility of a government witness").

As to the remainder of the challenged remarks, set forth below, the prosecutor merely discussed the evidence, highlighting the difference between the testimony of the police officers and that of the defendant, and suggested that if the jury used their common sense, they would believe the officers' testimony.[19]

---

[18]The prosecutor stated: "You are the finders of facts. When you do that, not only do you take your common sense and any experiences you may have, but you also [consider whether anyone has] an interest in the outcome of this case, and what is that interest. Is it a compelling interest? Is it an interest that they personally have? Now, sure, the police, their job is to make arrests, and it's the job of the Commonwealth or the [district attorney's] office to hopefully get convictions. But they're telling you — Detective Spirlet tells you, 'I was at that place. I saw this gentleman go in there approximately twenty-five times' . . . ."

[19]The prosecutor stated:

"Now, on the other hand, [the defendant] does have an interest in the outcome of this case. He does have a bias. He does have a prejudice. He's the one who's been accused. And I would suggest to you if my defense . . . was that it's not mine; I don't live there, then I would have kept things, or I would not have signed things that say that I live there or this bail slip.

". . .

"Is it common sense that [the defendant] never saw the marijuana

See *Commonwealth* v. *Stote*, 433 Mass. 19, 28 (2000) (prosecutors must limit scope of their closing arguments to facts in evidence and fair inferences from these facts); *Commonwealth* v. *Murchison*, *supra*. The prosecutor's comments were within the bounds of proper argument.[20] See *id.*; *Commonwealth* v. *Kozec*, 399 Mass. 514, 521 (1987) ("It is not improper to make a factually based argument that, due to the demeanor, disclosed circumstances, and appearance of a witness, a particular witness should be believed or disbelieved").

*Conclusion.*

For the foregoing reasons, we conclude that the judge properly denied the defendant's motions for required findings of not guilty. Furthermore, the defendant's trial counsel was not ineffective by failing to file a motion to suppress and by not calling certain witnesses. Finally, the prosecutor's redirect examination and closing argument were not improper.

*Judgment affirmed.*

---

that was packaged for sale in the refrigerator? That he never saw those? That he never had any control over those? See, he does not say, 'Yeah, I think I saw them, but they're not mine.' He says, 'I never saw them.' Two different answers."

[20]Our conclusion is further supported by the fact that defense counsel did not object to these statements at trial. See *Commonwealth* v. *Santiago*, 425 Mass. 491, 500 (1997), *S.C.*, 427 Mass 298, and 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998).