COMMONWEALTH vs. LUIS SANTIAGO.

No. 06-P-1144.

Hampden. April 12, 2007. - October 17, 2007.

Present: VUONO, SMITH, & MEADE, JJ.

Further appellate review granted, 450 Mass. 1104 (2007).

*Search and Seizure,* Warrant, Probable cause. *Constitutional Law,* Search and seizure, Probable cause. *Probable Cause. Dog.*

A Superior Court judge properly allowed the criminal defendant's motion to suppress evidence seized from his residence pursuant to a "no-knock" search warrant, where the affidavit in support of the application for the search warrant failed to establish probable cause that announcing the presence of police officers in advance of the execution of the warrant would jeopardize the officers' safety, in that the affidavit did not specify the presence of a BB pistol as a safety concern, the defendant's criminal history was insufficient to establish that he was prone to violence, and there was no information in the affidavit that the defendant might actually use one of two dogs present at his residence (described as a "pit bull") as a weapon. [522-525]

INDICTMENTS found and returned in the Superior Court Department on November 10, 2004.

A pretrial motion to suppress evidence was heard by *C. Brian McDonald*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Robert J. Cordy*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Bethany C. Lynch*, Assistant District Attorney, for the Commonwealth.

*Thomas F. McGuire* for the defendant.

VUONO, J. This case presents the issue whether the presence of a "pit bull" in a house to be searched provides probable cause to issue a "no-knock" search warrant. The defendant, charged with various drug offenses and receipt of stolen property, moved

successfully for suppression of the drugs and stolen property on which the charges were based.[1] The items were seized pursuant to a search warrant issued by the clerk-magistrate of the Palmer Division of the District Court Department. The warrant authorized the police to enter the defendant's residence without knocking and announcing their presence. Concluding that the affidavit submitted in support of the search warrant failed to establish probable cause that announcing the presence of police officers in advance of the execution of the warrant would jeopardize the officers' safety, a judge of the Superior Court allowed the defendant's motion to suppress. A single justice of the Supreme Judicial Court allowed the Commonwealth's petition to prosecute this interlocutory appeal. See G. L. c. 278, § 28E; Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996). We affirm.

*Background.* The facts, as found by the motion judge, were as follows: During the course of investigating a series of robberies, Officer Clifton Graves, of the Wilbraham police department, interviewed one Allen Morehouse. Morehouse confessed to participating in some of the robberies with an accomplice, Anthony Cruzado. He further told the police that Cruzado stole a lawn mower and a tool box from the home of Morehouse's mother and stepfather and gave the items to the defendant. Morehouse claimed to have seen the lawn mower and tool box at the defendant's residence shortly after the robbery. Morehouse knew the defendant and was familiar with the defendant's home because he often went there to "purchase and use heroin." Morehouse described the residence and told Officer Graves that the defendant had two dogs, a pit bull and a "mutt." Morehouse also claimed that he gave the defendant a BB pistol to hold for him. According to Morehouse, he and Cruzado had used the BB pistol during some of the robberies.

Based primarily on the information provided by Morehouse, Officer Graves sought and obtained a search warrant for the

---

[1]The defendant was indicted in November, 2004, and charged with (1) possession of heroin with intent to distribute, second offense, in violation of G. L. c. 94C, § 32(b); (2) possession of cocaine with intent to distribute, second offense, in violation of G. L. c. 94C, § 32A(c) and (d); (3) violation of the controlled substance law near a school or park, in violation of G. L. c. 94C, § 32J; and (4) receiving stolen property with a value that exceeds $250, in violation of G. L. c. 266, § 60.

defendant's residence at 18-20 Washburn Street, Springfield. In his supporting affidavit,[2] Officer Graves requested permission to search for the BB gun, the lawn mower, and the tool box. Officer Graves also sought approval to dispense with the knock and announce requirement on the following grounds:

> "1. For the safety of the officers executing the search warrant. Due to the fact that there are dogs present that could alert the presence of the officers and that one of these dogs is known to be a pit bull. This type of dog is known to be dangerous and aggressive. If the resident is given advanced warning of the presence of the police affecting [*sic*] this search warrant, this animal could be placed in a position to confront and harm the officers.

> "2. The common practice of narcotics dealers to keep weapons in the locations where they secret [*sic*] their narcotics, money, and perform sales related to narcotics — especially when [the defendant's] criminal history indicates 2 prior adult arraingnments [*sic*] for possesion [*sic*] of a firearm and ammunition.

> "3. The common practice of the destruction of narcotics and evidence as the police announce themselves.

> "4. The common practice of having look outs or police frequency scanning devices to forewarn themselves of any possible police presence so that they will have additional time to move, secret [*sic*], or destroy any evidence."

Officer Graves executed the warrant on August 12, 2004, with the assistance of Springfield police officers. During the search, the police found a BB pistol, a lawn mower, and a tool

---

[2]As is sometimes the case, "the affidavit here was not a model of craftsmanship." *Commonwealth* v. *Luthy,* 69 Mass. App. Ct. 102, 109 (2007). Rather than prepare a statement setting forth the facts which established probable cause, Officer Graves merely affixed his signature to a ten-page police report consisting of diary-like entries describing the day-to-day police investigation. Graves's signature appears beside a handwritten caption which states "sworn [and] subscribed to before: [clerk-magistrate]." While we recognize that "search warrant affidavits are often drafted in a hurly burly world without benefit of legal counsel," *id.* at 109 n.10, we see no justification for the slapdash nature of the affidavit here. Poor draftsmanship can waste the effort of much skilled investigative work.

box, as well as other stolen property. The police also seized cocaine, heroin, and packaging materials associated with the distribution of illegal drugs.

*Discussion.* The defendant moved to suppress the items seized from his home on the basis that the affidavit failed to justify a no-knock entry. After noting that the Commonwealth had rested on the "four corners" of the affidavit and had offered no evidence on the circumstances of the execution of the warrant, the judge allowed the motion. See *Commonwealth* v. *Scalise,* 387 Mass. 413, 421, 422 n.8 (1982).[3]

The Commonwealth concedes that the possible destruction of evidence is not an issue.[4] However, the Commonwealth maintains that the safety of the executing officers would have been jeopardized if the officers had been required to knock and announce their presence before executing the search warrant. We disagree.

Where a warrant lists several grounds justifying a no-knock entry, we examine each reason and assume that the magistrate's decision was based "on whichever of the offered grounds is most appropriate." *Commonwealth* v. *Macias,* 429 Mass. 698,

---

[3]We recognize that the suppression of evidence seized pursuant to an unlawful no-knock search is not automatic, and is not required where the policies underlying the knock and announce rule are substantially fulfilled in the particular circumstances of the search. *Commonwealth* v. *Wornum,* 421 Mass. 220, 221-222 (1995), cert. denied, 517 U.S. 1214 (1996) (policies underlying rule are "[1] to decrease the potential for violence, [2] to protect privacy, and [3] to prevent unnecessary damage to homes"). See Smith, Criminal Practice and Procedure § 235 (2d ed. 1983 & Supp. 2006). Here, however, the Commonwealth has failed to present any of the circumstances attending the execution of the warrant. Therefore, we are unable to determine whether the executing officers encountered threats to their safety that would have justified the no-knock entry, see *Commonwealth* v. *Gomes,* 408 Mass. 43, 46 (1990), or whether knocking would have been a "useless gesture." *Commonwealth* v. *Herring,* 66 Mass. App. Ct. 360, 365 (2006). Contrast *Commonwealth* v. *Wornum, supra* at 222 (suppression not required in "special circumstances" where one of two men identified in warrant as apartment occupant was told of search warrant and was present when his key was used to open door of apartment house).

[4]The concession is appropriate. The motion judge correctly determined that there was no risk the evidence sought would be destroyed. The warrant authorized the seizure of a lawn mower, a tool box, and a BB pistol, items not susceptible to destruction between the time the police announced their presence and entered the home.

704 n.6 (1999). Also, "[i]n making the probable cause determination, all the facts set forth in the affidavit must be examined together, rather than in isolation, taking into account the police officers' expertise and experience." *Commonwealth* v. *Ortega,* 441 Mass. 170, 176 (2004). We conclude, as did the motion judge, that none of the asserted grounds, considered alone or in combination with all the facts set forth in the affidavit, justifies the issuance of a no-knock warrant.

The Commonwealth contends that the presence of the BB pistol and a pit bull, coupled with the defendant's criminal history, establishes probable cause to dispense with the knock and announce requirement. It is true that the warrant authorized the seizure of a BB pistol. However, the affidavit did not specify the presence of the BB pistol as a safety concern. Furthermore, as the motion judge noted, there was no information in the affidavit that suggested that the BB pistol was given to the defendant to use against intruders or to defend himself in the operation of his alleged drug-selling activities. Rather, the BB pistol was given to the defendant "to hold" until such time as Morehouse needed it. Contrast *Commonwealth* v. *Valerio,* 449 Mass. 562, 573-574 (2007), where the Supreme Judicial Court upheld a no-knock warrant based on detailed information contained in the affidavit demonstrating that the defendant had an associate who was "known to keep several different types of weapons, including a handgun, a sword, knives, and ice picks, near the door of his apartment as protection against 'unwanted entry.' " The court explained: "Given warning, people inside the apartment could have attempted to destroy evidence of drugs, and moreover, they could have been *armed and dangerous*" (emphasis supplied). *Id.* at 574.

Likewise, the defendant's criminal history was insufficient to establish probable cause that the officers' safety would be endangered. The affidavit stated that the defendant "had 43 adult arraingnments [*sic*] with 25 being for narcotics offenses . . . [and] 4 adult arraingnments [*sic*] for firearms violations and . . . for an [] assault and battery and violation of an abuse prevention order." Although the absence of any convictions is notable, it is not fatal. A defendant's propensity for violence may be established through other means. See, e.g., *Com-*

monwealth v. Allen, 28 Mass. App. Ct. 589, 595 (1990) (failure to follow knock and announce procedures justified where defendant and friend were wanted for "violent crimes involving dangerous weapons"). The affidavit in the present case, however, contains no information suggesting that the defendant might arm himself or use force against the officers executing the search warrant. Contrast Commonwealth v. Ortega, supra at 177 (no-knock warrant justified where affidavit detailed defendant's "assaultive history, including previous arrests for narcotics violations and several charges of assault and battery by means of a dangerous weapon"); Commonwealth v. Eller, 66 Mass. App. Ct. 564, 571-572 (2006) (upholding no-knock entry where search warrant set forth defendant's record of violent crimes, including conviction for assault and battery on police officer, and information that defendant had been seen with handgun and small machine gun). Thus, we agree with the motion judge's conclusion that the information regarding the defendant's criminal history did not justify the no-knock warrant.

We now turn to the presence of the dogs. In a recent case involving assault and battery by means of a dangerous weapon, we concluded that "[t]here can be little doubt that a dog . . . used for the purpose of intimidation or attack falls within [the] definition" of a dangerous weapon. Commonwealth v. Fettes, 64 Mass. App. Ct. 917, 918 (2005), quoting from Commonwealth v. Tarrant, 2 Mass. App. Ct. 483, 486 (1974). While we agree with the Commonwealth that a pit bull (or a mutt) may, under the appropriate circumstances, pose a serious enough threat to an officer's safety to justify a no-knock warrant, no such circumstances were present here. There was no information in the affidavit that the defendant might actually use the pit bull as a weapon. See United States v. Gonzalez, 164 F. Supp. 2d 119, 125 (D. Mass. 2001).[5] But see United States v. Jewell, 60 F.3d 20, 23-24 (1st Cir. 1995) (officer's personal knowledge of

___

[5]In United States v. Gonzalez, supra at 122, the presence of a rottweiler dog, in conjunction with (1) detailed evidence that the defendant was dealing in cocaine; (2) suspicious behavior by the defendant reported by informants; and (3) "the common practice[s] of narcotic dealers," including the destruction of drugs upon police announcement, the hiding of drugs on individuals not likely to be searched, and the use of lookouts or police scanners, was deemed insufficient to support a no-knock entry under the lower standard of

defendant's convictions of violent offenses and presence of pit bull, characterized by court as "attack dog," justified no-knock warrant).

Although officers need not "arous[e] armed defendants, or their dog," *United States* v. *Buckley*, 4 F.3d 552, 558 (7th Cir. 1993), cert. denied sub nom. *Herman* v. *United States*, 510 U.S. 1124 (1994), the Commonwealth has not provided us with any authority that would permit a conclusion that the presence of a pit bull, standing alone, is a sufficient basis to dispense with the knock and announce rule.[6] Cases upholding no-knock warrants involving pit bulls have typically addressed unique circumstances, such as the known violence of a particular dog, *United States* v. *Esser*, 451 F.3d 1109, 1113 (10th Cir. 2006), or the role of the dog as a watchdog, *State* v. *Davis*, 240 Wis. 2d 15, 21-22 (2000). The relevant inquiry concerns the temperament and purpose of the particular dog, not the breed.

In sum, the affidavit for the no-knock warrant failed to establish a potential threat to the officers' safety. The affiant had no knowledge that there were weapons present, other than the BB pistol, or that the defendant was prone to violence. Furthermore, other than making a "categorical assertion" linking pit bulls to aggressive behavior, an approach rejected by the Supreme Judicial Court in *Commonwealth* v. *Jimenez*, 438 Mass. 213, 219 (2002), the affidavit failed to allege any particular facts warranting the belief that the dogs posed a danger to the officers' safety. As we conclude that there was an insufficient basis to justify the issuance of a no-knock warrant, we affirm the order allowing the defendant's motion to suppress.

*So ordered.*

reasonable suspicion required by the Fourth Amendment to the United States Constitution. See *Commonwealth* v. *Jimenez*, 438 Mass. 213, 219 (2002). The court found that the officer's safety justification was "not supported by the facts" insofar as the affidavit did not set out reasonable suspicion that the defendant was violent or likely to engage in violence, or that the dog would be used as a weapon. *United States* v. *Gonzalez, supra* at 125.

[6]We note, as did the motion judge, that the definition of a pit bull is elusive, and an informant identifying the presence of a "pit bull" may be describing any number of breeds. See generally *American Dog Owners Assn.* v. *Lynn*, 404 Mass. 73, 80 (1989).