Commonwealth *vs.* Luis Santiago.

Hampden. September 3, 2008. - November 17, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Search and Seizure,* Warrant, Affidavit, Probable cause. *Constitutional Law,* Probable cause, Search and seizure. *Probable Cause. Controlled Substances. Firearms. Dog.*

Discussion of the rule that police officers must "knock and announce" their presence and purpose before executing a search warrant, as well as the purposes of the rule and the circumstances in which the rule may be suspended. [574-575]

A Superior Court judge erred in allowing the criminal defendant's motion to suppress evidence seized from the defendant's residence pursuant to a search warrant authorizing police to enter the premises without announcement, where the affidavit in support of the search warrant provided a substantial basis to conclude that an announced search would put the safety of the officers at risk, based, in the aggregate, on information that the premises regularly had been used to facilitate the trafficking of narcotics; that the defendant was in possession of a weapon capable of being fired and inflicting injury and had a prior record of arrests for the possession of other firearms, for acts of violence, and for the disobedience of court orders; and that he possessed a type of dog which, in the affiant's experience, was known to be dangerous and aggressive, and could be used to confront the officers executing the warrant. [575-578] Cowin, J., concurring. Ireland, J., dissenting, with whom Marshall, C.J., and Botsford, J., joined.

Indictments found and returned in the Superior Court Department on November 10, 2004.

A pretrial motion to suppress evidence was heard by *C. Brian McDonald,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Bethany C. Lynch,* Assistant District Attorney, for the Commonwealth.

*Thomas F. McGuire* for the defendant.

Cordy, J. Based on information from a robbery suspect, a Wilbraham police officer sought a warrant to search the Spring-

field residence of the defendant, Luis Santiago, for stolen goods and the weapon (a BB pistol) used in an armed home invasion. The affidavit in support of the warrant application described Santiago as an active drug dealer with a lengthy criminal history including twenty-five "arraignments" for "narcotics offenses," four "arraignments for firearms violations," and arraignments "for an assault and battery and violation of an abuse prevention order." The affidavit also included information that Santiago owned two dogs, one being a "pit bull," that he kept on the premises.

Out of concern for the safety of the police officers that would be executing the warrant, the application sought permission to enter the residence without following the "knock and announce" protocol. A clerk-magistrate granted the search warrant authorizing the police "to enter the premises without announcement." On its execution, the police safely seized the BB pistol and the stolen property. They also seized cocaine, heroin, and materials for drug packaging.

Santiago filed a motion to suppress, arguing that the affidavit in support of the search warrant did not justify the inclusion of the so-called "no-knock" provision. A Superior Court judge granted the motion, reasoning that there was no evidence in the affidavit that Santiago intended to use the BB pistol rather than merely store it for use by others, or that Santiago had been "resistant" in his past encounters with the police, or that the dogs "were aggressive or were present to be used as weapons." The Appeals Court affirmed. *Commonwealth* v. *Santiago*, 70 Mass. App. Ct. 519 (2007). We granted the Commonwealth's application for further appellate review. We vacate the allowance of the motion to suppress, and remand the case for further proceedings consistent with this opinion.

1. *Discussion.* It is well settled that police officers must "knock and announce" their presence and purpose before executing a search warrant. *Commonwealth* v. *Jimenez*, 438 Mass. 213, 215 (2002). See *Commonwealth* v. *Macias*, 429 Mass. 698, 700 (1999); *Commonwealth* v. *Antwine*, 417 Mass. 637, 638 (1994); *Commonwealth* v. *Scalise*, 387 Mass. 413, 418 n.5 (1982). The rule arises from a long common-law tradition. See *Commonwealth* v. *Cundriff*, 382 Mass. 137, 140-147 (1980), cert. denied, 451 U.S. 973 (1981) (tracing common-law rule to

Seventeenth Century England). It has also been incorporated into the Fourth Amendment to the United States Constitution, which prohibits unreasonable searches and seizures. *Wilson* v. *Arkansas*, 514 U.S. 927, 934 (1995). The purposes of the "knock and announce" rule are threefold: to protect the privacy interests of individuals; to minimize the likelihood of property damage; and to reduce the possibility of violence after an unannounced entry. See *Richards* v. *Wisconsin*, 520 U.S. 385, 393 n.5 (1997); *Commonwealth* v. *Macias, supra* at 701; *Commonwealth* v. *Cundriff, supra* at 140-141.

The "knock and announce" rule may be suspended when there is a risk that announcement of the officers' presence would allow the destruction of evidence or put officer safety at risk. See *Commonwealth* v. *Jimenez, supra* at 216. See also *Commonwealth* v. *Macias, supra; Commonwealth* v. *Antwine, supra* at 639; *Commonwealth* v. *Scalise, supra* at 418; *Commonwealth* v. *Cundriff, supra* at 147 n. 15, and cases cited. See also *Wilson* v. *Arkansas, supra* at 936. To set aside the rule, the Commonwealth must establish that there is probable cause to believe that, in the particular circumstances of the search to be undertaken, compliance would create one or both of those risks. *Commonwealth* v. *Jimenez, supra.*[1] In the absence of exigent circumstances, this showing is to be made in the affidavit supporting the application for the search warrant. *Commonwealth* v. *Jimenez, supra* at 216-217. Whether the affidavit here was sufficient to establish the requisite risk to officer safety is the only question before us in this appeal.[2]

The affidavit included information relevant to the clerk-

[1]The United States Supreme Court has held that a "reasonable suspicion" that evidence might be destroyed or officer safety put at risk is sufficient to abrogate the "knock and announce" requirement under the Fourth Amendment to the United States Constitution. *Richards* v. *Wisconsin*, 520 U.S. 385, 394 (1997). In *Commonwealth* v. *Macias*, 429 Mass. 698, 701 (1999), we declined to depart from the standard of probable cause. See *Commonwealth* v. *Jimenez*, 438 Mass. 213, 216-217 n.3 (2002).

[2]In the Superior Court, the Commonwealth also contended that the "no-knock" provision was justified because the defendant might have destroyed evidence. The judge, however, correctly found that the police were authorized to search only for stolen property and a BB pistol, not items subject to ready destruction such as drugs. The Commonwealth conceded this point before the Appeals Court and does not press that argument here. *Commonwealth* v. *Santiago*, 70 Mass. App. Ct. 519, 522 n.4 (2007).

magistrate's consideration of that risk, including Santiago's pos-
session of a dangerous (if not deadly) weapon; his lengthy criminal
history including arrests for narcotics and firearm possession and
assault; and the presence of two dogs, one of which was a pit
bull. Although the investigation for which the search warrant was
sought was not a drug investigation, and the warrant did not
include authorization to search for narcotics, the affidavit also
included substantial information about Santiago's involvement in
the drug trade, and the use of his residence to cut, package, and
store heroin. This information came principally from the robbery
suspect, who had purchased heroin from Santiago on many occa-
sions during the previous six months, and who had "stayed with
him in his residence for lengths of time." It was corroborated
through contacts with the Springfield police narcotics unit, which
confirmed that there was an ongoing investigation of drug activ-
ity at that residence, and that controlled purchases of "narcotics"
had been made there.

The affidavit concluded with the applicant's averments that it
is a "common practice of narcotics dealers to keep weapons in
the locations where they secret [*sic*] their narcotics, money, and
perform sales"; that a pit bull is "known to be dangerous and
aggressive"; and that if Santiago was given advance warning of
the presence of the police "the [pit bull] could be placed in a
position to confront and harm the officers."

"[A]ffidavits in support of search warrants are to be ap-
proached with a view toward common sense, read in their entirety
and with considerable latitude allowed for the drawing of in-
ferences." *Commonwealth* v. *Jimenez, supra* at 218. See *Com-
monwealth* v. *Alessio*, 377 Mass. 76, 82 (1979) (magistrate may
properly rely on "[r]easonable inferences and common know-
ledge" when determining probable cause). Their sufficiency is to
be decided "on the basis of a consideration of all of its alle-
gations as a whole, and not by first dissecting it and then sub-
jecting each resulting fragment to a hypertechnical test of its suf-
ficiency standing alone." *Commonwealth* v. *Burt*, 393 Mass. 703,
715 (1985), quoting *Commonwealth* v. *Stewart*, 358 Mass. 747,
751 (1971). See *Commonwealth* v. *Ortega*, 441 Mass. 170, 176
(2004) (facts in affidavit must be examined "together, rather than
in isolation"); *Commonwealth* v. *Fisher*, 54 Mass. App. Ct. 41,
44 (2002), quoting *Commonwealth* v. *Fraser*, 410 Mass. 541, 545

(1991) (factors "innocent of themselves," when combined may amount to probable cause). The magistrate is also to "tak[e] into account the police officers' expertise and experience" when determining whether the probable cause standard was met. *Commonwealth* v. *Ortega, supra.* See, e.g., *Commonwealth* v. *Silva,* 440 Mass. 772, 784 (2004); *Commonwealth* v. *Feijoo,* 419 Mass. 486, 498 (1995); *Commonwealth* v. *West,* 55 Mass. App. Ct. 467, 470 (2002).

In allowing Santiago's motion to suppress, the judge dissected the affidavit and tested each of its fragments standing alone, not allowing for the reasonable inferences that a magistrate could draw from the entire array of information presented to him. In doing so, for example, the judge noted that the search warrant "did not seek narcotics," and therefore discounted the relevance of the information that Santiago and his residence had been involved in the drug trade on the question of officer safety, essentially concluding that in the absence of drugs, there would be no reason for the dogs to hold the police at bay. This hypertechnical analysis of the affidavit was error. While more information regarding the particulars of Santiago's criminal history or the use of his dogs might have been helpful to the magistrate, we cannot say that the affidavit was inadequate in its absence. The magistrate was entitled to draw reasonable inferences from all of the allegations, in the aggregate, to use his common knowledge, and to credit the applicant's expertise.

Although the probable cause standard is more rigorous than that of reasonable suspicion, it does not require "definitive proof." *Commonwealth* v. *Anthony,* 451 Mass. 59, 69 (2008), citing *Commonwealth* v. *Spano,* 414 Mass. 178, 184 (1993). It does require the articulation of facts and circumstances present in the specific case, which, with the benefit of inference, experience, and the application of common sense, establish a substantial basis for concluding that officer safety would be at risk. *Commonwealth* v. *Stewart,* 358 Mass. 747, 749-752 (1971). The expression of "general averments" or "categorical assertions" will ordinarily be inadequate to satisfy this standard. *Commonwealth* v. *Jimenez,* 438 Mass. 213, 219 (2002) (probable cause requires unique facts, not references to "common" practices of drug dealers). Consequently, we agree with Santiago that the mere assertion that the owner of a residence to be searched owns a dog, even of a breed

commonly known to be aggressive, would, standing alone, be insufficient to meet the probable cause standard. Compare *United States* v. *Gonzalez*, 164 F. Supp. 2d 119, 125 (D. Mass. 2001) (presence of Rottweiler dog alone without evidence that "the defendant himself was violent" did not constitute sufficient safety risk to justify "no-knock" entry), with *United States* v. *Jewell*, 60 F.3d 20, 23 (1st Cir. 1995) (prior record of convictions of violent offenses combined with knowledge that defendant owned pit bull dog "more than adequate to justify a 'no-knock' warrant"), and *Commonwealth* v. *DiStefano*, 22 Mass. App. Ct. 535, 542 (1986) (information that defendant suspected of drug dealing previously possessed firearm, had "one or more Doberman pinschers on the premises," and had at one time been fugitive, sufficient to justify unannounced nighttime entry to execute warrant). However, that is not this case.

Here, the magistrate had information that the officers would be entering premises that regularly had been used to facilitate the trafficking of narcotics, not merely the residence of someone suspected of receiving stolen property who happened to own two dogs. Additionally, the magistrate had information that Santiago was in possession of a weapon capable of being fired and inflicting injury, and that he had a prior record of arrests for the possession of other firearms, for acts of violence, and for the disobedience of court orders. Finally, the magistrate knew that the defendant possessed a type of dog which, in the officer's experience, was known to be dangerous and aggressive, and could be used to confront the officers. These factors, when combined, provided a substantial basis for the clerk-magistrate to conclude that there was probable cause that an announced search would put the safety of the officers at risk. Cf. *United States* v. *Jewell, supra* at 24 ("Fourth Amendment did not require the police to risk having to fight off a forewarned attack dog before executing their warrant").

We vacate the allowance of the motion to suppress, and remand for further proceedings consistent with this opinion.[3]

*So ordered.*

Cowin, J. (concurring). While I agree that the motion to sup-

---

[3]The United States Supreme Court has held that violations of the Fourth

press should have been denied in this case, I disagree with the court's dictum that "the mere assertion that the owner of a residence to be searched owns a dog, even of a breed commonly known to be aggressive, would, standing alone, be insufficient to meet the probable cause standard." *Ante* at 577-578. The court takes the view that the presence of a potentially dangerous dog on the premises is merely one factor tending to support the validity of a "no-knock" entry, one that must be combined with other factors (such as the nature of the criminal enterprise, the presence of weapons, and the violent tendencies of the defendant in this case) for the "no-knock" warrant to issue.

It is with this portion of the court's reasoning that I disagree. In my view, where a police officer applying for a warrant includes information in an affidavit that the premises are likely to contain a dangerous dog, this information should be enough to permit the issuance of a "no-knock" warrant. The police should not be required to establish, as a prerequisite to obtaining a "no-knock" warrant, that the particular dog is dangerous, nor should they need to point to other factors indicating a threat to officer safety. Rather, the fact that the dog is in the home and is of a breed known to be dangerous, either in the officers' own experience or through common knowledge, should be sufficient.

We have recognized that police will be justified in dispensing with the "knock and announce" rule where adherence to the requirement would put officer safety at even greater risk than that normally inherent in the execution of a search warrant. See, e.g., *Commonwealth* v. *Valerio*, 449 Mass. 562, 573-574 (2007); *Commonwealth* v. *Ortega*, 441 Mass. 170, 176-178 (2004); *Commonwealth* v. *Cundriff*, 382 Mass. 137, 147 (1980), cert. denied, 451 U.S. 973 (1981). See also *Wilson* v. *Arkansas*, 514 U.S. 927, 934-936 (1995). Where the police have probable cause, see *Commonwealth* v. *Macias*, 429 Mass. 698, 701 (1999), to believe that the premises contain a dangerous dog, we should not force officers to exacerbate the already considerable danger by requiring them to knock and announce their presence. As certain other courts have recognized, the requirement that police entry into the

---

Amendment's "knock and announce" rule do not warrant suppression of seized evidence. See *Hudson* v. *Michigan*, 547 U.S. 586 (2006). Because we conclude that the "no-knock" warrant was properly granted in this case, we need not address that issue.

home be reasonable does not require the police to risk having to fight off a forewarned attack dog before executing their warrant. See *United States* v. *Esser*, 451 F.3d 1109, 1113 (10th Cir. 2006); *United States* v. *Buckley*, 4 F.3d 552, 558 (7th Cir. 1993), cert. denied sub nom. *Herman* v. *United States*, 510 U.S. 1124 (1994) (Fourth Amendment to United States Constitution does not require police to "arous[e] armed defendants, or their dog"); *Adams* v. *State*, 201 Ga. App. 12, 14 (1991); *State* v. *Miller*, 740 P.2d 1363, 1367 (Utah Ct. App. 1987) (statutory provision that "no-knock" warrant may be issued where "physical harm may result to any person if notice were given" satisfied by fact that "[t]wo large watch dogs are always present and might pose a hazard to arresting officers"). Contrast *United States* v. *Gonzalez*, 164 F. Supp. 2d 119, 124-125 (D. Mass. 2001) (presence of Rottweiler dog, absent "evidence of any potential for violence on the part of defendant or the dog," insufficient to justify "no-knock" entry on officer safety grounds); *People* v. *Riddle*, 258 Ill. App. 3d 253, 260-261 (1994) (breed or type of dog alone insufficient to support finding that dog was "vicious" so as to justify officers' noncompliance with "knock and announce" rule). Where this kind of exposure to danger is present, it is my view that nothing in the Constitution requires that officers arbitrarily reduce their ability to use surprise to neutralize the threat or otherwise to take full control of the situation. Cf. *Commonwealth* v. *Garner*, 423 Mass. 735, 743-746 (1996) (upholding use of "flash-bang" device in execution of "no-knock" warrant as reasonable).

In short, the only question that the clerk-magistrate should have considered in deciding whether to authorize a "no-knock" entry was whether the dog might pose a danger to the police. Regardless whether the defendant specifically used the dog as a guard, the animal could have posed a significant threat to officer safety by virtue of its size, strength, and the general temperament of its breed. This should be sufficient.

IRELAND, J. (dissenting, with whom Marshall, C.J., and Botsford, J., join). For essentially the same reasons outlined by the Appeals Court in its decision in this case, *Commonwealth* v. *Santiago*, 70 Mass. App. Ct. 519 (2007), I conclude that, even taking

as a whole the allegations in the affidavit (i.e., the defendant's arrest record for drugs, firearms possession, violence, possession of BB pistol, and the presence of two dogs), the evidence available to the clerk-magistrate did not establish the probable cause necessary to support the issuance of a "no-knock" warrant. Therefore, I respectfully dissent.